Judy J. JONES, Plaintiff,

v.

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY, Defendant.

Civil Action No. 89–0552 (RCL).

United States District Court,
District of Columbia.

Oct. 15, 1996.

Richard A. Salzman, Kator, Scott & Heller, Washington, DC, for Plaintiff.

Robert John Kniaz, Frederic Howard Schuster, Bruce Paul Heppen, Gerard Joseph Stief, Arnold Irvine Melnick, David R. Keyser, WMATA, Office of the General Counsel, Washington, DC, James William Morrison, Arter & Hadden, Washington, DC, Linda Iris Lazarus, Office of Corporation Counsel, Washington, DC, for Defendant.

## ORDER AND MEMORANDUM OPINION I

LAMBERTH, District Judge.

This case comes before the court on three motions by defendant Washington Metropolitan Area Transit Authority (WMATA). Upon consideration of the filings and oral argument of counsel, the relevant law, and for the reasons more fully set forth below, it is hereby ORDERED that:

1. WMATA's motion for leave to file a post-hearing brief is hereby GRANTED. The Clerk of the Court is directed to file the lodged brief.

2. WMATA's motion to amend its previous legal memorandum opposing plaintiff Jones' motion for partial summary judgment is hereby DENIED.

3. WMATA's motion for judgment as a matter of law or, in the alternative, for a new trial is hereby DENIED.

A separate Memorandum Opinion II, 946 F.Supp. 1023, issued this date, will address the non-jury issues tried before the court.

## I. BACKGROUND

Jones filed this action in March 1989 under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 et seq., alleging that WMATA had denied her promotions in retaliation for her protected complaints of discrimination and also because of her sex, race and age. WMATA fired Jones in March 1991 and she amended her complaint to claim that her termination, as well as WMATA's subsequent refusal to reinstate her, were retaliatory.

On August 7, 1992 the court partially granted WMATA's motion to dismiss certain of Jones' claims. On August 6, 1993 the court granted Jones' motion for partial summary judgment on her reinstatement claim, ruling that WMATA's refusal to reinstate her after her firing constituted retaliation under Title VII and the ADEA. Jones then narrowed some of her remaining claims, among other things dropping her Title VII allegation of racial discrimination and also foregoing her claim of age discrimination—but not retaliation—under the ADEA.

As narrowed, the case presented three claims of retaliation under the ADEA for the jury to decide: (1) WMATA's refusal to promote Jones to Senior Rail Operations Supervisor, TS–4, in 1987; (2) WMATA's refusal again to promote Jones to the same position when she applied for it in 1988; and (3) WMATA's termination of Jones in March 1991. The parties stipulated that if the jury found liability on any of these three claims, the court would decide the amount of any back pay due. But the jury still had to determine whether any violation was willful, *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 616, 113 S.Ct. 1701, 1709, 123 L.Ed.2d 338 (1993), as well as the amount of compensatory damages, if any, to be awarded in connection with any findings of retaliation, *Moskowitz v. Trustees of Purdue Univ.,* 5 F.3d 279, 283–84 (7th Cir.1993). Finally, the jury had to make willfulness and damage determinations in connection with WMATA's refusal to reinstate Jones, which the court had previously determined was unlawful.

On October 20, 1994, the jury found in favor of WMATA on the 1987 TS–4 claim, but determined that WMATA's decisions to reject Jones for promotion to TS–4 in 1988 and to terminate her in March 1991 were the products of retaliation under the ADEA. The jury also decided that both actions were willful and that the refusal to reinstate was willful as well. The jury awarded Jones a total of $50,000 in compensatory damages—$10,000 for the 1988 refusal to promote and $20,000 apiece for the termination and refusal to reinstate.

Because the events in this case predate the Civil Rights Act of 1991, Jones' Title VII claims must be decided by the court. *Landgraf v. USI Film Prods.,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). First, the court must determine whether the above-mentioned personnel actions violated Title VII, independent of the jury's findings under the ADEA. Second, the court must decide whether the 1987 denial of Jones' promotion to Quality Assurance Inspector, TS–5—which arises solely under the sex discrimination provisions of Title VII and does not implicate the ADEA—was unlawful. Third, the court must decide issues of relief under both Title VII and the ADEA, including the amount of back pay owed Jones and the amount of liquidated damages due her under the ADEA given the jury's determination that the ADEA violations were willful, 29 U.S.C. § 626(b). The court must also decide the nature of any injunctive relief due, such as promotion and reinstatement, as well as Jones' request that WMATA and its Assistant General Manager in charge of Rail Transportation, Fady Bassily, be enjoined from further retaliation against her or other WMATA employees who engage in protected EEO activity. Jones also asks for attorneys' fees.

## II. WMATA'S MOTION TO FILE A POST–HEARING BRIEF

WMATA requests leave to file a post-hearing brief that addresses two legal issues: (1) Whether under Title VII and the ADEA a defendant has a final opportunity to prove by clear and convincing evidence that an adverse employment action would have occurred even absent retaliatory motive. (2) What standard determines whether an adverse inference attaches to WMATA's loss of employee test scores pertaining to Jones' Title VII claim that she was denied a TS–5 promotion in 1987 because of sex discrimination.

WMATA asks the court to use its inherent powers to permit the post-hearing brief to be filed. Since the time of the hearing, WMATA has had an opportunity to review the case law on adverse inferences and to review the pleadings in *Berger v. Iron Workers Reinforced Rodmen Local 201,* 843 F.2d 1395 (D.C.Cir.1988), *cert. denied,* 490 U.S. 1105,

109 S.Ct. 3155, 104 L.Ed.2d 1018 (1989), regarding burdens of proof in Title VII cases. Jones asks, however, that the motion for leave to file be denied on the ground that WMATA's post-hearing brief contains no new material.

In light of the complexity of the substantive legal issues and the time pressures of both the jury trial and the bench trial, the court grants WMATA's motion for leave to file. Upon inquiry from chambers, counsel for Jones has indicated that he is content with his prior submissions on the underlying issues and does not seek to file a further response on the merits.

### III. WMATA'S MOTION TO AMEND ITS PREVIOUS LEGAL MEMORANDUM

■ In its May 1993 opposition to Jones' motion for partial summary judgment, WMATA stated that Mark Miller, a WMATA manager and chairman of the selection panel that denied Jones' promotion to TS–4 in 1988, "considered that Ms. Jones' decision to sign a protest letter with subordinates whom she supervised evidenced below average attitude." Seventeen months later, Miller disavowed any such consideration in his testimony at trial. Accordingly, WMATA seeks to withdraw the statement from its summary judgment opposition thereby preventing Jones from using the statement to impeach Miller. WMATA argues that evidence does not come in through the unsubstantiated statements of counsel, but through testimony; *i.e.*, an inadvertent mischaracterization by an attorney does not establish factual conflict. Jones responds that an inconsistency between the statement of counsel and Miller's testimony is no reason to strike the former; indeed, that is why Jones used the statement to impeach Miller.

■ Although both parties concur that admissions made in a pleading are binding, they dispute whether similar binding effect should be accorded to admissions made in legal memoranda. *See, e.g.,* 10A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2723, at 65–66 (1983). The court need not resolve this dispute. The question is not whether the admission should have binding effect but whether it is properly in the case at all. The court holds that a statement in a legal memorandum submitted in opposition to a motion for summary judgment may be weighed by the finder of facts along with any subsequent modification or revocation of that statement. Moreover, WMATA's post-trial motion to change what they filed in May 1993 is untimely; the motion was filed two months after the jury rendered its verdict and 19 months after the original submission of the memorandum.

### IV. WMATA'S MOTION FOR A NEW TRIAL

In support of its motion for a new trial, WMATA alleges, first, that the jury should have been instructed that WMATA was entitled to a final opportunity to prove by clear and convincing evidence that an adverse employment action would have occurred even absent retaliatory motive. Second, WMATA protests four other instructions—two of which were proposed by WMATA but rejected by the court, and two of which were presented to the jury over WMATA's objection: (1) the jury should have been instructed that Jones had no right to counsel at her March 1991 meeting with Al Brown, a manager in Rail Transportation; (2) the jury should have been instructed that if WMATA had a good faith belief that Jones was denied a promotion for a lawful reason, then Jones was not entitled to money damages; (3) the jury was improperly instructed that the decision of the Equal Employment Opportunity Commission (EEOC) in a case involving employee Joseph Taylor was entitled to no weight; and (4) the jury was improperly instructed that Jones was engaged in protected activity when in 1985, jointly with her subordinates, she protested discrimination in the Rail department.

Third, WMATA raises three matters concerning the admissibility of evidence: (1) testimony by various witnesses alleging prior discriminatory acts by WMATA should not have been admitted; (2) this court's initial holding in *Jones v. WMATA,* Civil Action No. 89–0552, 1993 WL 835589 (D.D.C. Aug. 6, 1993), that WMATA retaliated by failing to

reinstate Jones, should not have been admitted; and (3) the court's finding of sex discrimination in *Townsend v. WMATA,* 746 F.Supp. 178 (D.D.C.1990), is not relevant to the present charge of retaliation and therefore inadmissible—both on that ground and because it is hearsay. Finally, WMATA asserts that my partiality and bias in the presence of the jury is a sufficient basis for a new trial.

### A. Jury Instruction Regarding But–For Causation

■ WMATA contends that the jury should have been instructed that WMATA could avoid liability if it demonstrated by clear and convincing evidence that retaliation was not the but-for cause of the adverse personnel action against Jones; *i.e.,* that Jones would have been fired even absent retaliation. *See Berger,* 843 F.2d at 1423, 1426; *Chen v. GAO,* 821 F.2d 732, 739 (D.C.Cir.1987). Jones characterizes this requested instruction as a mixed-motive instruction. She claims that an assertion by WMATA that its adverse action would have occurred without retaliation is an affirmative defense, *see Price Waterhouse v. Hopkins,* 490 U.S. 228, 246, 109 S.Ct. 1775, 1788, 104 L.Ed.2d 268 (1989), which must be pleaded, *see* Fed.R.Civ.P. 8(c), or it is waived. According to Jones, WMATA did not argue joint motive but denied outright that retaliation occurred; in Jones' view, the issue is whether WMATA's alleged legitimate reason for its action is pretextual. WMATA points out, however, that our circuit in *Berger* allowed defendants final recourse in a retaliation case to dispute but-for causation without requiring that the defense be raised affirmatively in the pleadings.

Like the case at bar, *Berger* was pleaded as a pretext case. The court stated, however, that "[t]he evidence presented by the parties ... suggest[s] that the reasons for the defendant's conduct are mixed, consisting of both retaliatory and legitimate factors. For that reason, this circuit has adopted a 'but for' test of causation." 843 F.2d at 1423. It seems that the evidentiary showing in *Berger* prompted the court to depart from a pretext model and adopt a mixed motive model—a precursor of the mixed motive paradigm later clarified in *Price Waterhouse.*

The circumstances here are quite different. In its post-hearing brief (at 3 & n. 2) WMATA expressly confirms that this case was tried—not just pleaded—as a pretext case in which either legal or illegal motives, but not both, underlay the adverse employment actions. The evidence here was presented in one bundle for the trier to decide whether retaliation or a legitimate reason motivated the employer. WMATA denied a retaliatory motive altogether; it never produced evidence showing an alternative, lawful basis for its conduct co-existent with a retaliatory motive. There is, accordingly, no reason for a mixed motive instruction.

■ In a case tried under the rubric of pretext, the defendant does not get a second bite at the apple to show that it would have taken the same action anyway. Even if the mixed motive paradigm adopted by the court in *Berger* were still good law after *Price Waterhouse* (as later modified by the Civil Rights Act of 1991, 42 U.S.C. § 2000e-2(m)), WMATA would at a minimum have been required to introduce evidence of a dual motive at trial. Instead, it argued that a non-pretextual legitimate reason was its sole motivating factor.

### B. WMATA's Further Objections to Jury Instructions

■ WMATA also sought a jury instruction, which the court rejected, that Jones had no right to counsel at her meeting with Al Brown. Jones insists that she did not claim a right to counsel, so a jury instruction on that subject was unnecessary. WMATA replies that whether Jones had a right to counsel is relevant in assessing the reasonableness of her conduct in refusing to meet with Brown. According to WMATA, Jones' unreasonable refusal to meet with her superior was an important factor that resulted in her termination in 1991.

■ A jury instruction is of course inappropriate unless the underlying issue is firmly established in law. In this instance, it is not at all clear that Jones had no right to counsel. She agreed to meet with her imme-

diate supervisor, Albert Yorro, without counsel present, but declined to meet with Brown, a higher-level official with whom she had already experienced difficulties, unless her attorney was in attendance. The meeting with Brown was to be investigatory in nature—in connection with the so-called red ribbon incident. When a public employee is under investigation, with potential loss of liberty or property, due process may require that the employee be represented by counsel. *See Hannah v. Larche,* 363 U.S. 420, 442, 80 S.Ct. 1502, 1514–15, 4 L.Ed.2d 1307 (1960) ("when governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process").

WMATA cites *Hannah* for the proposition that government employees typically are not entitled to be represented by counsel in an investigatory proceeding. But *Hannah* involved the Civil Rights Commission, a purely investigative agency. The Court was careful to note that when the "governmental action does not partake of an adjudication, as for example, when a general fact-finding investigation is being conducted, it is not necessary that the full panoply of judicial procedures be used." *Id.* Here, by contrast, the investigation was followed directly by Jones' termination—clearly an adjudicatory function.

Although the Court in *Hannah* held that the Civil Rights Commission "does not adjudicate, [and therefore] it need not be bound by adjudicatory procedures," *id.,* the Court went on to suggest that due process would be a greater concern if "the Commission's proceedings might irreparably harm those being investigated by subjecting them to ... the distinct likelihood of losing their jobs," *id.* at 443, 80 S.Ct. at 1515.

The court concludes that there is sufficient uncertainty surrounding the circumstances of Jones' meeting with Brown to foreclose a jury instruction that Jones had no right to counsel as a matter of law.

■■■ Next, WMATA argues for an instruction to the jury that if WMATA had a good faith belief that Jones was denied a promotion for a lawful reason, then Jones

was not entitled to money damages. *See Hazen Paper,* 507 U.S. at 616, 113 S.Ct. at 1709. Jones insists that the "willfulness" instruction was faithful to *Hazen Paper,* and this court agrees. The Court held in *Hazen Paper* that "[i]f an employer incorrectly but in good faith and nonrecklessly believes that the statute permits a particular age-based decision, then *liquidated* damages should not be imposed." *Id.* (emphasis added). In the ADEA context, liquidated damages (*i.e.,* back pay) do not equate to—indeed they were in addition to—the underlying monetary damages assessed against the defendant. *Id.* at 608, 113 S.Ct. at 1705. Consequently, *Hazen Paper* does not speak to the propriety of money damages.

■■■ WMATA also protests the court's instruction to the jury that the EEOC decision in a case involving employee Joseph Taylor was "entitled to no weight" (WMATA's characterization of the instruction). The EEOC found that Taylor had not established by a preponderance of the evidence that retaliation played a role in WMATA's decision to downgrade Taylor's employment status. Jones responds that a cautionary instruction regarding the EEOC determination was appropriate. In fact, the instruction read to the jury did not use the phrase "no weight." It simply said that the EEOC "findings have no legal significance." The court elaborated: "Regardless of the findings of the EEOC about a particular person's case, that person has the right to go to court and have the case decided by a judge and jury." This is a correct statement of the law; the court rejects WMATA's protest.

■■■ Finally, WMATA contends that the court should not have instructed the jury that Jones engaged in protected activity when in 1985, jointly with her subordinates, she sent at letter to management protesting discrimination in the Rail department. An employer's interest in the smooth functioning of its business must be balanced against the employees' interest in resolving discrimination disputes. Toward this objective, the District of Columbia Circuit has held that an EEO protest is protected activity unless it is "expressed disruptively, insubordinately, or

in a manner damaging to [the employer's] legitimate management interests." *Parker v. Baltimore & Ohio R.R. Co.*, 652 F.2d 1012, 1019–20 (D.C.Cir.1981). WMATA does not argue that Jones' 1985 protest was disruptive or insubordinate. Indeed, WMATA manager Mark Miller acknowledged at trial that the letter in question was polite. Moreover, WMATA has not shown that Jones' protest was damaging to WMATA's management interests. Absent such a showing, there is no basis upon which to conclude that Jones' actions were not protected. The court finds that the jury instruction was proper.

### C. Admissibility of Evidence

■ WMATA maintains, first, that testimony by various witnesses—including Avon Mackel, Herbert Anzueto, Joan Lewis, and Joseph Taylor—alleging prior discriminatory acts by WMATA should not have been admitted. Jones responds that such testimony is relevant to prove that Fady Bassily and other WMATA officials regularly retaliate against employees who protest discrimination. The court holds that, at a minimum, evidence of prior discriminatory acts are relevant to WMATA's motive and intent, *see* Fed.R.Evid. 404(b), and on the facts of this case the danger of unfair prejudice from such evidence does not outweigh its probative value, *see* Fed.R.Evid. 403. *See also Morris v. WMATA*, 702 F.2d 1037, 1045 (D.C.Cir.1983) ("The question of the legitimacy of the employer's motivation ... is one upon which the past acts of the employer have some bearing").

■ Second, WMATA argues that this court's initial holding in *Jones v. WMATA*, Civil Action No. 89–0552, 1993 WL 835589 (D.D.C. Aug. 6, 1993)—that WMATA retaliated by failing to reinstate Jones—should not have been admitted, or should have been admitted only in a bifurcated damages hearing after liability had been determined, or at least the jury should have been instructed that the prior summary judgment was subject to appeal. These arguments are without merit. Facts found when summary judgment is partially granted are to be specified, and "[u]pon the trial of the action the facts so specified shall be deemed established, and

the trial shall be conducted accordingly." Fed.R.Civ.P. 56(d).

■ Third, WMATA asserts that the court's finding of sex discrimination in *Townsend v. WMATA*, 746 F.Supp. 178 (D.D.C. 1990), is both hearsay and irrelevant to the present charge of retaliation. As to relevance, the fact that WMATA may have been engaged in widespread discrimination based upon sex, age, race or any other impermissible factor would certainly be relevant to its intent or motive to retaliate against those who complained of such discrimination.

■ On the hearsay question, Judge Harris of this court did indeed strike the factual findings of the *Townsend* case as hearsay in his recent opinion in *Taylor v. WMATA*, 922 F.Supp. 665, 675–76 (D.D.C. 1996). Jones counters, however, that the circumstances here are different; the *Townsend* case arose in connection with cross examination—only after WMATA had opened the door during its direct examination. The court is not persuaded by this explanation. WMATA's direct examination raised the question whether Bassily was familiar with the entry into this litigation of Kator, Scott & Heller, a law firm that had opposed WMATA in *Townsend* and that was hired to represent Jones in February 1991 after her then-current attorney had become ill. Testimony on WMATA's awareness that new attorneys were involved might "open the door" to establish that the same attorneys opposed WMATA in *Townsend*; but it surely does not open the door to introduce the facts of the *Townsend* litigation.

On the other hand, even if the *Townsend* decision is hearsay, it is still admissible as an exception to the hearsay rule under Fed. R.Evid. 803(24). The requirements for admissibility are that the evidence: (a) has circumstantial guarantees of trustworthiness, (b) is offered on a material fact, and (c) is more probative on the point for which it is offered than other reasonably available evidence. *Id.* The court concludes that these requirements are met in this instance, and that the interests of justice were best served by admission of *Townsend* into evidence. Rule 803(24) also requires pre-trial notice.

WMATA had ample notice; the question of the admissibility of *Townsend* was the subject of extensive pre-trial briefing.

### D. Partiality and Bias of the District Judge

As a final ground upon which to demand a new trial, WMATA questions my impartiality and accuses me of bias in the presence of the jury. In particular, WMATA argues that the court exceeded permissible limits in its ardent questioning of WMATA witnesses, and that the court communicated to the jury its belief regarding WMATA's guilt. In *United States v. McCord*, 509 F.2d 334 (D.C.Cir.1974) (en banc), *cert. denied*, 421 U.S. 930, 95 S.Ct. 1656, 44 L.Ed.2d 87 (1975), our circuit reviewed Judge Sirica's aggressive questioning of Watergate witnesses. The court held that the defendant was not deprived of a fair trial, and observed that "[t]he judge ... is not a passive bystander in the arena of justice, a spectator at a 'sporting event'; rather he or she has the most pressing affirmative responsibility to see that justice is done in every case." 509 F.2d at 347 (footnotes omitted).

In the present case, the court's questioning was sparing, focused, fair, and an appropriate exercise of its "affirmative responsibility to see that justice is done in every case." *McCord* shelters judicial intervention—even in a criminal case—more active than anything that occurred in this civil proceeding. *See also Kennedy v. Los Angeles Police Dep't*, 901 F.2d 702, 709 (9th Cir.1989) (reversal not warranted even though court's questions were "quite pointed and intemperate"; court did not impede counsel's questioning of witnesses, nor preempt counsel's function, nor assume role of witness or advocate, nor misstate factual accounts, nor introduce evidence; "[v]ery few cases outside of the criminal law area support an appellate finding of general judicial misconduct during trial").

Furthermore, the court instructed the jurors that they "should not take my questions to witnesses as any indication of the Court's opinion.... Remember at all times that you, as jurors, are at liberty to disregard all comments of the Court in arriving at your own findings as to the facts." STANDARDIZED JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 1–7. The court elaborated upon this point, reiterating that

> [t]he law of the United States permits the Judge to comment to the jury on the evidence in the case. Such expressions, when made, are only expressions of the Judge's opinion as to the facts, and you are not bound by that opinion. If, during the course of this trial or this charge, I have made or make any comment on any evidence, or any comment which you interpret as an expression or intimation of opinion as to any fact, you are free to disregard it. You are the sole and exclusive judges of all issues of fact in this case.
>
> You are not to permit yourself to be influenced by anything the Court has said or done which you might think suggested to you that he is inclined to favor the claims or positions of either party. I have not intended to express or to intimate any opinion as to what witnesses are worthy of belief or disbelief; what facts are established; which facts have not been established; or what inferences should be drawn from the evidence. If any expression of mine has seemed to indicate an opinion relating to any of these matters, I instruct you to disregard that seeming indication.

*Id.*, No. 1–6, 1–8.

Absent contrary indication, it is not unreasonable to conclude that the jury followed these instructions. *See, e.g., United States v. Perholtz*, 842 F.2d 343, 361 (D.C.Cir.), *cert. denied*, 488 U.S. 821, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988).

### V. WMATA'S MOTION FOR JUDGMENT

WMATA asks the court to overturn two of the jury's findings: (1) that WMATA retaliated against Jones by denying her promotion to TS–4 in 1988, and (2) that WMATA retaliated against Jones by terminating her in 1991. At the outset, the court takes note of the rigorous standard for overturning a jury verdict: "[I]f (1) the elements of a prima facie case are present, and (2) there exists sufficient evidence for a reasonable jury to

reject the defendant's proffered reasons for its actions, then the evidence is sufficient to allow the jury to determine whether intentional discrimination has occurred, and we are without power to reverse the jury's finding." *Gaworski v. ITT Commercial Fin. Corp.*, 17 F.3d 1104, 1109 (8th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 355, 130 L.Ed.2d 310 (1994).

■ Rule 50 of the Federal Rules of Civil Procedure provides that "the court may grant a motion for judgment as a matter of law" if "there is no legally sufficient evidentiary basis for a reasonable jury to have found" for the non-moving party. Judgment as a matter of law should only be granted "if, viewing the evidence in the light most favorable to the plaintiff and giving [her] the advantage of every fair and reasonable inference that the evidence may permit, there can be but one reasonable conclusion drawn." *Richardson v. Richardson–Merrell, Inc.,* 857 F.2d 823, 827 (D.C.Cir.1988), *cert. denied,* 493 U.S. 882, 110 S.Ct. 218, 107 L.Ed.2d 171 (1989).

### A. Retaliatory Denial of Promotion to TS–4 in 1988

In *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), the Supreme Court held that a prima facie case, together with the discrediting of the defendant's putative nondiscriminatory explanation for its conduct, is sufficient to sustain a finding of discrimination:

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination, and . . . no additional proof of discrimination is required.

*Id.* at 511, 113 S.Ct. at 2748 (internal quotation omitted) (emphasis in original).

■ The burden of establishing a prima facie case of discrimination is "not onerous," *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981), and the same is true of a prima facie case of reprisal:

> In order to establish a prima facie case of retaliation a plaintiff must show: (1) that she engaged in a statutorily protected activity; (2) that the employer took an adverse personnel action; and (3) that a causal connection existed between the two. As in a case of disparate treatment, this initial burden is not great.

*McKenna v. Weinberger,* 729 F.2d 783, 790 (D.C.Cir.1984) (footnote omitted). The causal connection may be established by showing that the employer had knowledge of the protected activity and that there was a temporal link between that activity and the adverse personnel action. *Mitchell v. Baldrige,* 759 F.2d 80, 86 (D.C.Cir.1985).

■ WMATA concedes that in 1988 Mark Miller knew of Jones' protected activity under the ADEA—indeed, he was required to respond to inquiries about her 1987 EEOC charge in the autumn of 1988. WMATA's contention, however, is that while Mark Miller may have been aware of Jones' 1987 charge, Jones did not establish a nexus between that knowledge and the denial of promotion. Nor, according to WMATA, has Jones rebutted WMATA's legitimate business reason for not promoting Jones—that she failed her interview and was otherwise evaluated only as "satisfactory." WMATA points out that Jones was rated "above expected" on only 6 of 68 criteria; that none of Jones' peers thought she should be promoted; and that Jones offers no evidence why the denial of her promotion by panel members Kochersberg, Lee, Collins, and Francis should be deemed retaliatory, or even that they knew of Jones' prior complaint.

It was Miller, however, who chaired the panel that considered applicants for TS–4 in the autumn of 1988. The jury could have concluded that as chairman he played an instrumental—perhaps dominant—role in rejecting Jones. Further, the jury could have determined that Bassily personally approved all promotions to supervisory positions in the Rail department, and that Bassily and Miller worked hand-in-glove to retaliate against Jones.

The jury could also have considered that Miller's rationale for rejecting Jones was pretextual. Among other things, he partly attributed the low marks he gave Jones for attitude and leadership to her response to a particular interview question; but he admitted that several of the selected candidates gave the same answer. Moreover, Jones ranked higher than several candidates chosen on the "absolute scores" assigned to the applicants.

There was more than enough evidence for the jury to reject WMATA's explanation of events and to conclude that retaliation was the real reason. In such circumstances, a court is "without power to reverse the jury's finding." *Gaworski,* 17 F.3d at 1109.

### B. Retaliatory Termination in 1991

■ WMATA argues that Jones did not establish a prima facie case with respect to the 1991 termination, which occurred 3½ years after Jones filed an EEOC charge in September 1987. Jones counters that the protected activity that triggered the 1991 termination was not the 1987 EEOC charge but Jones' hiring of new counsel in February 1991 to prosecute the present litigation. WMATA replies, there is no evidence that anyone in the Rail department knew at the time of Jones' termination that new counsel had entered this case.

Further, WMATA insists that Jones was terminated for flagrant insubordination—refusing to meet with management unless her attorney was present—and that Jones has not shown that this rationale was pretextual. WMATA notes that its employment manual permits termination for the first offense of insubordination.

First, on the matter of WMATA's awareness of Jones' protected activity in hiring new counsel: It is undisputed that key officials including Bassily knew that this lawsuit had been filed in 1989 and was still pending. The jury could have disbelieved Bassily and concluded that he knew that Jones had recently retained new counsel. Consider: (A) WMATA's office of General Counsel knew of the appearance of new counsel on behalf of Jones; it is likely that the office was also dealing with Bassily at the time. (B) Al

Brown questioned employee Jackie Rhodes about Jones' lawyers during his lengthy interrogation of her (see below), only a week before Jones was fired.

Given these facts, the jury could reasonably have determined that pertinent WMATA officials were aware in March 1991 both that this suit was pending and that Jones had in February 1991 retained new counsel to prosecute it. Hence the jury could have found the elements needed to establish a prima facie case of retaliation.

The jury could also have concluded that WMATA's explanation for Jones' termination—alleged insubordination—was pretextual. Jones was aware that Al Brown had interrogated Jackie Rhodes for 10 hours over two days regarding the red ribbon incident; he threatened Rhodes with firing, pressed her for "dirt" on Jones, and said he wanted to know about Jones' lawyers. The jury heard testimony that when Jones refused to meet with Brown, Miller yelled at her, followed her down the corridor, bumped her; then Denise McKenzie grabbed Jones' wrist to get her to accept a memorandum directing her to meet with management. Later, responding to instructions from her immediate supervisor, Albert Yorro, Jones reported to the medical office where she was recorded as having high blood pressure five hours after the incident.

In light of these events, the jury might have concluded that Jones had ample reason to be concerned about a meeting with Brown. The jury may also have considered that Jones justifiably required that an attorney be present. Indeed, Personnel Director Warren Eisenhower conceded that an employee familiar with Al Brown's abusive interrogation techniques could reasonably have insisted on representation during any meeting with him. Even if the jury was unsure of Jones' right to be represented at the meeting by counsel, it may nonetheless have believed that management used the occasion as an excuse to fire her in retaliation for pressing forward with this lawsuit.

The jury may also have taken note of, and credited, several other factors: (1) Jones' willingness at all times to meet her immedi-

ate supervisor, Yorro; (2) WMATA's violation of its own policies in firing Jones without affording her an opportunity to tell her side of the story; (3) third party evidence showing that Bassily and his subordinates retaliated against employees who filed EEO complaints; and (4) evidence that Jones herself had earlier been subjected to retaliation.

In short, there is no basis upon which to conclude that the jury should be reversed in its findings of retaliation. WMATA's Rule 50 motion is denied.

SO ORDERED.