**Lester J. COPLEY, Plaintiff,**

**v.**

**BAX GLOBAL, INC., Defendant.**

**No. 98–3048–CIV.**

United States District Court,
S.D. Florida.

May 5, 2000.

Neil Chonin, Chonin, Sher & Navarrette, Coral Gables, Michael Masinter, Nova University Law Center, Fort Lauderdale, FL, for Plaintiff.

Carmen Sirkin Johnson, Muller, Mintz, et al., Mark Cheskin, Steel, Hector & Davis, Miami, FL, for Defendant.

## ORDER ON DEFENDANT'S POST TRIAL MOTIONS

HIGHSMITH, District Judge.

THIS CAUSE is before the Court upon Defendant's post trial motions. For the reasons that follow, the Court: (1) denies Defendant's renewed motion for judgment as a matter of law; (2) denies Defendant's motion for a new trial with respect to liability; and (3) denies Defendant's motion for a new trial with respect to damages, subject to Plaintiff's acceptance of remittitur of the compensatory damages to $120,308.00 and the punitive damages to $350,000.00.[1]

## I.  BACKGROUND

In this employment discrimination case, Plaintiff alleged that he was terminated because of his ancestry or national origin in violation of 42 U.S.C. § 1981. Specifically, Plaintiff contended that he was terminated from his position as Defendant's manager of its ocean services division for Florida and Latin America because he is not Hispanic. After the close of discovery, Defendant moved for summary judgment, arguing that (1) Plaintiff could not maintain an action under § 1981 because he had been employed on an at-will basis and (2) Defendant had a legitimate, non-discriminatory reason for terminating Plaintiff, which Plaintiff could not rebut as being a pretext for discrimination. On January 26, 2000, the court entered an order denying Defendant's motion for summary judgment. *See Copley v. Bax Global, Inc.,* 80 F.Supp.2d 1342 (S.D.Fla. 2000). In denying Defendant's motion for summary judgment, the Court ruled that an at-will employee may maintain an action under § 1981, *see id.* at 1345–47, and that Plaintiff had produced sufficient circumstantial evidence to create a factual question concerning the pretextual nature of Defendant's proffered reason for terminating him. *See id.* at 1350–51. The case then proceeded to trial.

The trial commenced on February 7, 2000 and concluded with a jury verdict in Plaintiff's favor on February 9, 2000. During his case-in-chief, Plaintiff presented evidence, which if accepted, demonstrated that Defendant's highest management made a calculated decision to terminate Plaintiff so they could replace him with an individual of Hispanic descent. At the close of Plaintiff's case-in-chief, Defendant moved for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure with respect to Plaintiff's claim that he was terminated because of his ancestry or national origin and with respect to the issue of punitive damages. The Court denied Defendant's motion in all

---

1.  On February 28, 2000, Defendant, through its new counsel, filed two separate post trial motions with incorporated memoranda of law. One motion is titled Defendant's motion for remittitur, or alternative motion for new trial, and motion for judgment as a matter of law on damages and incorporated memorandum of law. The other is titled Defendant's motion to set aside verdict and to enter judgment as a matter of law or alternatively motion for new trial and incorporated memorandum of law. These two submissions overlap each other significantly and are not organized in the most coherent manner. The Court has therefore arranged the issues raised by Defendant's two motions to coincide with the post trial practice anticipated by Rules 50 and 59 of the Federal Rules of Civil Procedure.

respects. Defendant renewed its motion for judgment as a matter of law at the close of its case, and the Court again denied the motion. The case, including the issue of punitive damages, was given to the jury on February 9, 2000. After a brief deliberation, the jury returned its verdict in Plaintiff's favor, awarding him $500,000.00 in compensatory damages and $1,000,000.00 in punitive damages. On February 11, 2000, the Court entered a final judgment for $1,500,000.00 in Plaintiff's favor, in accordance with the jury's verdict.

Defendant has now filed its post trial motions, seeking: (1) judgment as a matter of law; (2) a new trial; or (3) remittitur of the jury's verdict. The Court will first address Defendant's renewed motion for judgment as a matter of law. Then the Court will address, together, Defendant's request for a new trial or remittitur.

## II. DISCUSSION

### A. Judgment As a Matter of Law

Rule 50 of the Federal Rules of Civil Procedure "governs motions for judgment as a matter of law in jury trials. It allows the trial court to remove cases or issues from the jury's consideration 'when the facts are sufficiently clear that the law requires a particular result.'" *Weisgram v. Marley Co.*, —— U.S. ——, 120 S.Ct. 1011, 1016–17, 145 L.Ed.2d 958 (2000) (quoting 9A Charles a. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 2521, p. 240 (2d ed.1995)). A " '[j]udgment as a matter of law after the verdict may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment.'" *Pulte Home Corp. v. Osmose Wood Preserving, Inc.*, 60 F.3d 734, 739 (11th Cir.1995) (quoting 5A James W. Moore et al., *Moore's Federal*

*Practice,* ¶ 50.07[2] (2d ed.1995)) (alteration in original).

A party may only move for judgment as a matter of law following the trial, if it has first made, and thus preserved, the motion at the close of the evidence. *See* Fed. R.Civ.P. 50(b); *Crawford v. Andrew Systems, Inc.*, 39 F.3d 1151, 1154 (11th Cir. 1994) ("we would not permit defendants who had made no previous motion [for judgment as a matter of law] to ask the court to rule on the legal sufficiency of the evidence once a verdict has been returned against them"). This is because it would be unfair to allow a party to utilize post trial motions to ambush an unexpecting adversary with an attack on the sufficiency of his evidence adduced at trial, once it is too late to cure the defects. *See Crawford v. Andrew Systems, Inc.*, 39 F.3d at 1154. This logic extends to preclude a party from raising as grounds for a Rule 50(b) motion for judgment as a matter of law, following the trial, issues that were not raised in the Rule 50(a) motion, before the case was given to the jury. *See Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1289 (11th Cir.1998) (citing *Sulmeyer v. Coca Cola Co.*, 515 F.2d 835, 845–46 (5th Cir.1975)). As noted above, Defendant raised two issues in making its Rule 50(a) motion at trial: (1) that Plaintiff had not satisfied his burden of proof with respect to his claim that he was terminated because of his ancestry or national origin and (2) that Plaintiff had failed to lay a sufficient predicate to submit the issue of punitive damages to the jury. Defendant has renewed both of these arguments in its post trial motions.[2]

#### 1. Plaintiff's Burden of Proof

■ In this case, Plaintiff had the burden of proving that Defendant acted with a discriminatory motive when it fired him. In assessing whether Plaintiff has met this burden, the Court looks to "the methods of proof" set forth in *McDonnell Douglas*

---

**2.** To the extent that Defendant has attempted to raise new arguments for judgment as a matter of law through its post judgment mo-

tions, the Court has disregarded those arguments.

*Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Richardson v. Leeds Police Dep't,* 71 F.3d 801, 805 (11th Cir.1995) (applying *McDonnell Douglas* methods of proof to review grant of judgment as a matter of law). Defendant argues that Plaintiff did not satisfy his burden of proof because he offered insufficient evidence to rebut Defendant's assertion that he was terminated for poor job performance—Defendant's proffered legitimate, nondiscriminatory reason for terminating Plaintiff.[3] Defendant's assertion, however, is belied by the actual evidence adduced at trial. Plaintiff introduced both testimonial and documentary evidence (primarily printouts of Defendant's internal electronic mail messages) supporting Plaintiff's theory that discrimination on account of ancestry or national origin was the reason for his termination. For example, Fritz Keller, Plaintiff's supervisor, testified concerning Defendant's attempts to conceal that Plaintiff was immediately being replaced, by a preordained successor of Hispanic descent. *See, e.g.,* Feb. 8, 2000 Trial Tr. at 82–84. In short, the record in this case contains ample evidence to support the conclusion that Defendant's proffered reason for terminating Plaintiff was a mere pretext. Accordingly, Defendant's renewed motion for judgment as a matter of law is denied with respect to Plaintiff's burden of proof on the ultimate issue of discrimination.

3. Defendant does not appear to argue that Plaintiff failed to establish a prima facie case under the *McDonnell Douglas* framework. In any event, Plaintiff made out his prima facie case by demonstrating that he was member of a protected class (Caucasians), he was terminated, and was replaced by a non-member of the protected class. The Court also notes that it is somewhat inconsistent for Defendant to argue that Plaintiff did not offer evidence sufficient to rebut Defendant's proffered legitimate, nondiscriminatory reason and, then, argue that this is a mixed-motives case, not a pretext case.

4. *Kolstad* was a Title VII case and involved the standard for awarding punitive damages under 42 U.S.C. § 1981a(b)(1). *See Kolstad,*

## 2. Predicate for Punitive Damages

In its renewed motion for judgment as a matter of law, Defendant also asserts that the issue of punitive damages was improperly submitted to the jury. Defendant's position is based upon the "good faith" exception to punitive damages in employment discrimination cases recognized by the Supreme Court in *Kolstad v. American Dental Ass'n,* 527 U.S. 526, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999).[4] This exception, rooted in principles of agency law and the remedial purposes of the employment discrimination statutes, shields employers who make a bona fide effort to institute nondiscrimination policies, from the prospect of an award of punitive damages when, despite the good faith efforts of the employer to comply with the law, employment discrimination has nonetheless occurred. *See id.* at 2127–30. Often, this exception will preclude punitive damages when a corporate defendant's nondiscrimination policy has been disregarded or violated by employees not of a policy-making rank.

■ Defendant maintains that it is uncontested that it had in place a company wide nondiscrimination policy and that therefore it cannot be subjected to an award of punitive damages. It is not enough, however, to simply have a nondiscrimination policy in place. *See Lowery v. Circuit City Stores, Inc.,* 206 F.3d at 446 ("While an employer's institution of a writ-

119 S.Ct. at 2122. The instant case was brought under 42 U.S.C. § 1981, not Title VII; therefore, the punitive damages were not pursued under § 1981a(b)(1) but under § 1981, which has long been interpreted to allow claimants to seek punitive damages. *See Johnson v. Ry. Express Agency,* 421 U.S. 454, 460, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) (noting that punitive damages are available under § 1981). The Court, however, assumes that the exception announced in *Kolstad* applies with equal force to employment actions brought under § 1981. *See Lowery v. Circuit City Stores, Inc.,* 206 F.3d 431, 441 (4th Cir.2000) (construing *Kolstad* to apply to § 1981 cases).

ten policy against race discrimination may go a long way toward dispelling any claim about the employer's reckless or malicious state of mind ... such a policy is not automatically a bar to the imposition of sanctions."); *Deters v. Equifax Credit Info. Serv., Inc.,* 202 F.3d 1262, 1271 (10th Cir.2000) (negating the good faith defense because of the "direct malice or reckless indifference to federally protected rights" by the defendant's final decision maker); *E.E.O.C. v. Wal–Mart Stores, Inc.,* 187 F.3d 1241, 1248 (10th Cir.1999) (noting that "a written policy against discrimination ... alone is not enough"). For the good faith exception to apply, there must be a policy of nondiscrimination both in words and in practice. Here, there is evidence to support a finding that Defendant's highest management employees knowingly violated Defendant's own non-discrimination policy and federal law when they terminated Plaintiff. Under these circumstances, *Kolstad* 's good faith exception does not bar punitive damages. *See Lowery v. Circuit City Stores, Inc.,* 206 F.3d at 445–46; *see generally Alexander v. Fulton County,* 207 F.3d 1303 (11th Cir. 2000). Defendant's renewed motion for judgment as a matter of law is, therefore, denied with respect to the issue of punitive damages.

### B. New Trial and Remittitur

Rule 59 of the Federal Rules of Civil Procedure provides the trial court discretion to grant a new trial. The grounds for granting a new trial are not enumerated; rather, Rule 59(a) authorizes the grant of a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R.Civ.P. 59(a). In implementing Rule 59, courts have recognized that a new trial may be warranted by: (1) prejudicial error of law; (2) a verdict against the weight of the evidence; or (3) an excessive or inadequate jury award. *See Monsanto v. Mycogen Plant Science, Inc.,* 61 F.Supp.2d 133, 193 (D.Del.1999); *see also* Charles A.

Wright, *Law of Federal Courts,* 676–77 (5th ed.1994). When it is determined that the damages awarded by a jury are excessive but the finding of liability is supported by the evidence, it is appropriate to order remittitur or a new trial limited to the issue of damages. *See Wilson v. Taylor,* 733 F.2d 1539, 1549–50 (11th Cir.1984), *overruled on other grounds by Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). A plaintiff, of course, may always choose a new trial over remittitur. *See* U.S. Const. amend. VII; *Johansen v. Combustion Engineering, Inc.,* 170 F.3d 1320, 1329 (11th Cir.) ("no judgment for a remittitur may be entered without the plaintiff's consent because the Seventh Amendment prohibits the court from substituting its judgment for that of the jury's regarding any issue of fact"), *cert. denied,* —— U.S. ——, 120 S.Ct. 329, 145 L.Ed.2d 256 (1999).

In this case, Defendant contends that the verdict is against the weight of the evidence, there was prejudicial error, and the jury verdict is excessive. The Court will address Defendant's contentions in terms of the jury's finding of liability and its award of damages.

#### 1. The Jury's Finding of Liability

Defendant makes several arguments that the jury's verdict as to liability should be set aside and a new trial ordered. Only one is worthy of discussion; the others either ask the Court to invade the province of the jury and assess the credibility of the evidence offered at trial or re-raise questions of law that were previously ruled upon by the Court, during trial or at the summary judgment stage. The Court will not accept Defendant's invitation to assess the credibility of the evidence or revisit its prior determinations of law. The issue that the Court will address is Defendant's contention that the interrogatories given to the jury constituted error, which renders the jury's finding of liability invalid.

Throughout this litigation, Defendant approached and presented the case as a

typical employment discrimination case, in which the evidence was to be assessed under the *McDonnell Douglas* burden shifting framework. *See Copley*, 80 F.Supp.2d at 1350; February 7, 2000 Trial Tr. at 108–09 (setting forth Defendant's theory of the case-no intent to discriminate). In fact, on January 24, 2000, Defendant submitted as its proposed jury instructions the Eleventh Circuit's pattern jury instructions and special interrogatories in 42 U.S.C. § 1981 cases, without the mixed-motives affirmative defense interrogatory. The Court gave a slightly modified version of the same pattern instructions and interrogatories that Defendant submitted. At the charge conference, however, Defendant requested, for the first time, the inclusion of the mixed-motives defense interrogatory. The Court denied that request, ruling that the instructions and interrogatories adequately reflected the law. Defendant now urges that this is a mixed-motives case, not a pretext case, and that the failure to include the mixed-motives interrogatory constituted grave error.

■ In making its argument, Defendant harps on the distinction between a mixed-motives case and a pretext case. Truth be told, there is, most often, little difference between the two types of cases. *See Pulliam v. Tallapoosa County Jail*, 185 F.3d 1182, 1186 (11th Cir.1999) ("In either situation [mixed-motives or pretext], the reasons—the proof—is the same.").[5] The distinction becomes significant, and the shifting of the burden of proof—not production—to the defendant comes into play, in cases where discriminatory motive is conceded or conclusively established by direct evidence. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 260, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (White, J., concurring) (discussing the distinction between mixed-motives and pretext); *id.* at 270–71, 109 S.Ct. 1775 (O'Connor, J., concurring) (discussing when the burden of proof shifts to the employer). In those cases, the employer can, nonetheless, avoid liability by proving by a preponderance of the evidence that it would have taken the adverse employment action, irrespective of its discriminatory motive. In this case, Defendant never conceded that it was motivated in any way by a forbidden animus and, while there was very strong circumstantial evidence of discrimination, there was no smoking gun. *See generally Copley*, 80 F.Supp.2d at 1347–51 (discussing the lack of direct evidence of discrimination, but concluding there was significant circumstantial evidence creating a question of fact as to the pretextual nature of Defendant's proffered reason for terminating Plaintiff). Thus, the distinction upon which Defendant so heavily relies is of little moment. "In a case tried under the rubric of pretext, the defendant does not get a second bite at the apple to show that it would have taken the same action anyway." *Jones v. Washington Metro. Area Transit Auth.*, 946 F.Supp. 1011,1017 (D.D.C.1996). Defendant litigated this case as a pretext case until the eleventh hour, when at the charge conference it, for the first time, requested that the mixed-motives defense interrogatory be given to the jury. Defendant did not present a case of dual

---

5. In arguing that the Court was required to give the mixed-motives interrogatory, Defendant cites to *Pulliam* as being "on point" with this case and mandating the giving of the additional interrogatory. *Pulliam*, however, is not on all fours with this case. In fact, *Pulliam* presented the converse situation to this case; i.e., the issue on appeal was whether or not the district court erred in giving the mixed-motives interrogatory. The Eleventh Circuit found no error in giving the interrogatory, where the defendant had provided am-

ple notice throughout the litigation of its intent to present a mixed-motives defense, *see id.* at 1185–87, and the evidence supported the giving of such an interrogatory. *See id.* at 1187. Far from requiring the mixed-motives interrogatory be given in the present case, *Pulliam* illuminates the lack of a substantial difference between mixed-motives cases and pretext cases and demonstrates the trial court's discretion in instructing a jury. *See id.* at 1186–87.

motives (one legal and the other illegal); rather, it argued there was one legal reason for Plaintiff's termination—the poor performance of Defendant's Latin American division under Plaintiff's supervision. *See* February 7, 2000 Trial Tr. at 109–113. Having failed to argue and present a case of dual motives, Defendant was not entitled to inclusion of the mixed-motives defense interrogatory. *See Jones v. Washington Metro. Area Transit Auth.,* 946 F.Supp. at 1017. Moreover, the instructions given in this case adequately reflect that Plaintiff carried the ultimate burden of proving that his termination was the product of illegal discrimination, as he contended, and not due to his poor job performance, as Defendant contended. *See Fields v. New York Office of Mental Retardation & Developmental Disabilities,* 115 F.3d 116, 121 (2nd Cir.1997). Accordingly, Defendant's motion for a new trial on the issue of liability is denied.

## 2. The Jury's Award of Damages [6]

Finally, the Court must consider the jury's award of damages. The jury, drawn from perhaps the most racially and ethnically diverse community in the United States, concluded that Plaintiff, a white male, had been illegally discriminated against because of his ancestry or national origin. The jury then awarded Plaintiff $500,000.00 in compensatory damages and $1,000,000.00 in punitive damages. From the size of this award, it is evident that the jury intended to convey a strong message that employment decisions motivated by any sort of discriminatory animus are reprehensible and will not be tolerated. While the Court applauds this sentiment and is always hesitant to reduce a jury verdict, the size of both the compensatory damages and the punitive damages cannot be supported by the evidence and must therefore be reduced.

### a. Compensatory Damages

The jury's award of $500,000.00 in compensatory damages included both economic and non-economic damages, without distinction. Soon after he was terminated by Defendant, Plaintiff found a higher paying job. It is uncontested that, at most, Plaintiff lost $20,308.00 in wages as a result of his termination. Therefore, the remainder of the compensatory damages award— $479,692.00—is attributable to Plaintiff's non-economic injuries, i.e., his emotional pain and mental anguish.

In an employment discrimination case, the plaintiff "need not make out the elements of the tort of intentional infliction of emotional distress in order to recover compensation for mental anguish." *Walters v. City of Atlanta,* 803 F.2d 1135,1146 n. 8 (11th Cir.1986). Rather, the plaintiff must merely present evidence "from which a jury could determine that [he] ... suffered mental anguish." *Id.* In the present case, the testimony of Plaintiff and his wife clearly provided a basis for the jury to find that Plaintiff suffered mental anguish as a result of Defendant's illegal discrimination. The question thus becomes whether the record supports an award of $479,692.00 in damages for emotional pain and mental anguish.

It has properly been observed that damages for emotional distress or mental anguish are at best difficult to measure. *See Bradford v. Iron County C–4 Sch. Dist.,* No. 82–303–C(4), 36 Fair Empl. Prac. Cas. (BNA) 1296, 37 Empl. Prac. Dec. (CCH) 35,404, 1984 WL 1443, at *7 (E.D.Mo. June 13, 1984); *see also Urseth v. City of Dayton,* 680 F.Supp. 1150, 1156 (S.D.Ohio 1987) (noting the "dilemma" faced by courts in assessing awards for mental anguish, which are "by their nature ineluctable and difficult to measure"). That sentiment rings true in this case. The Court harbors no doubt that Plaintiff suffered

6. The Court has not addressed Defendant's contention that it was error to fail to instruct the jury with concern to the tax consequences of Plaintiff's possible recovery. Any potential error in that regard has been adequately compensated for by the Court's order of remittitur.

severe emotional distress as a result of his termination, and that injury should not be minimized simply because it is not readily observable or easily converted to a monetary figure. But at the same time, an award of nearly $500,000.00 for emotional distress strikes the Court as excessive, in a case where the lost wages amounted to approximately $20,000.00 and Plaintiff had a higher paying job within two months of his termination.

■ In assessing the appropriateness of an award of compensatory damages, courts look to: (1) the size of the award; (2) the rational relationship between the award and the evidence adduced at trial; and (3) awards in similar cases. *See Clark v. Metro Health Found., Inc.*, 90 F.Supp.2d 976, 980 (N.D.Ind. 2000) (quoting *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1285 (7th Cir.1995)). In employment cases, the Eleventh Circuit has approved of awards for mental anguish or emotional distress as high as $150,000.00. *See, e.g., Walters v. City of Atlanta*, 803 F.2d at 1146 & n. 8 (approving of $150,000.00 award for mental anguish); *see also Perdue v. City Univ. of New York*, 13 F.Supp.2d 326, 337 (E.D.N.Y.1998) (collecting cases in which large compensatory damages awards have been approved of based upon mental anguish). It is very rare, however, for any award of non-economic compensatory damages above that amount to stand. *See Hurley v. Atlantic City Police Dept.*, 933 F.Supp. 396, 423 (D.N.J.1996) (discussing limitations on awards of compensatory damages); *but see Eckmann v. Bd. of Educ. of Hawthorn Sch. Dist.*, 636 F.Supp. 1214 (N.D.Ill.1986) (remitting jury verdict from $2,000,000.00 to $750,000.00 compensatory damages). Thus, $150,000.00 may be viewed as a benchmark figure, above which awards of compensatory damages for mental anguish become suspect.

■ The evidence does not reflect that Plaintiff suffered any type of extraordinary psychological injury attributable to his termination, which would support the jury's award of nearly $500,000.00 for emotional pain and mental anguish. The mental pain and suffering incurred by Plaintiff was consistent with that which most individuals, with typical financial and family obligations, would feel if suddenly terminated, under ominous circumstances, from a job they had held for years. Reasonable people, and thus reasonable juries, could differ as to an amount that would compensate for such mental anguish; but, $479,692.00 is beyond the realm of reasonableness. Remittitur is therefore appropriate. The evidence in this case would support an award for emotional pain and mental anguish of up to $100,000.00. Hence, the Court orders the jury's award of compensatory damages remitted to $120,308.00 ($100,000.00 for emotional pain and mental anguish and $20,308.00 for lost wages).

#### b. Punitive Damages

As noted above, the size of the jury's verdict clearly reflected disdain for Defendant's conduct. "The purpose of punitive damages is to punish the defendant for [its] willful or malicious conduct and to deter others from similar behavior." *Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 307 n. 9, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986). Thus, the award of punitive damages was the appropriate means for the jury to reprimand Defendant for conduct that the jury determined constituted egregious discrimination.

■ Awards of punitive damages are, of course, subject to constitutional limits. *See BMW of North America v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). In assessing the appropriateness of an award of punitive damages, courts look to: (1) the reprehensibility of the defendant's conduct; (2) the ratio between the compensatory damages and the award of punitive damages; and (3) available civil penalties for similar conduct. *See id.* at 575–85, 116 S.Ct. 1589; *see also Pavon v. Swift Transp. Co., Inc.*, 192 F.3d

902, 909–10 (9th Cir.1999) (applying *BMW* factors in employment discrimination case). In this case, there was sufficient evidence for the jury to conclude that Defendant engaged in highly reprehensible conduct—the termination of Plaintiff simply because he was not Hispanic. The $1,000,000.00 award of punitive damages is roughly ten times the remitted award of compensatory damages. A ten-to-one ratio of punitive damages is within the constitutionally acceptable range. *See BMW of North America*, 517 U.S. at 581–83, 116 S.Ct. 1589; *Pavon*, 192 F.3d at 910 ("In *BMW*, the [C]ourt noted that ratios of 4:1 and 10:1 would not be excessive, although 500:1 was excessive."). As for the final consideration (sanctions for similar conduct), however, the jury's award of $1,000,-000.00 is not supported.

"[I] n determining whether an award of punitive damages is excessive [a court] should 'accord substantial deference' to legislative judgments concerning the appropriate sanctions for the conduct at issue." *BMW of North America*, 517 U.S. at 583, 116 S.Ct. 1589 (quoting *Browning–Ferris Indus. of Vt. v. Kelco Disposal, Inc.*, 492 U.S. 257, 302, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989) (O'Connor, J., concurring in part and dissenting in part)). Plaintiff chose to bring this action under 42 U.S.C. § 1981, rather than Title VII— the traditional vehicle for bringing this type of employment discrimination case. As a result of Congress's 1991 amendments to the statute enacted through the Civil Rights Act of 1991, § 1981 now provides an alternative means of redress for many employment discrimination claimants. *See generally, Copley*, 80 F.Supp.2d at 1345 (discussing the effect of 1991 amendments to § 1981). As part of the Civil Rights Act of 1991, Congress also enacted 42 U.S.C. § 1981a, which "creat[ed] a right to recover compensatory damages and punitive damages for certain violations of Title VII of the Civil Rights

Act of 1964." *Landgraf v. USI Film Prod.*, 511 U.S. 244, 247, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Until that time, punitive and compensatory damages had not been available to Title VII claimants.[7] Congress, however, placed limits on the amount of damages available under § 1981a, with the maximum total amount for combined compensatory and punitive damages that individual claimant may recover being capped at $300,000.00. *See* 42 U.S.C.1981a(3). Thus, while Congress approved of Title VII claimants recovering punitive damages under certain circumstances, it recognized a need to limit that sanction.

The damages caps of § 1981a(3) are explicitly made inapplicable to actions, such as this one, brought under § 1981. *See* 42 U.S.C. § 1981a(4). The caps are, nonetheless, instructive with concern to Congress's judgment of the appropriate sanction for employers who engage in egregious instances of discrimination. *See generally BMW of North America*, 517 U.S. at 583–84, 116 S.Ct. 1589. Therefore the caps may serve as a type of barometer for measuring the excessiveness of an award of punitive damages. *See id.; see generally Lowery v. Circuit City Stores, Inc.*, 206 F.3d at 441 ("any case law construing the punitive damages standard set forth in § 1981a ... is equally applicable to clarify the common law punitive damages standard with respect to a § 1981 claim").

In *BMW of North America*, the Supreme Court observed that where there was no statutory cap on punitive damages and the defendant did not have a history of violating the law, there was no apparent justification for an award of punitive damages far above the maximum amount authorized by statute as a civil penalty for the same conduct that the punitive damages were imposed to deter. *See* 517 U.S. at 584–85, 116 S.Ct. 1589. Therefore, the Court reversed a $2,000,000.00 award of

---

7. Section 1981, being akin to a tort remedy, has long been interpreted to allow claimants to recover compensatory and punitive damages. *See Johnson v. Ry. Express Agency*, 421 U.S. at 460, 95 S.Ct. 1716.

punitive damages in a tort action against a car distributor for its failure to disclose that a car had been repainted prior to its sale, where the State of Alabama's maximum civil penalty for deceptive trade practices was $2,000.00. *See id.* While § 1981 does not impose a limit on the amount of punitive damages available, there is also no evidence to suggest that Defendant has a history of engaging in the type illegal discrimination that it was found to have committed in this case. In employment discrimination cases analogous to the facts of this case, but brought under Title VII, Congress has determined that $300,000.00 is an appropriate sanction for employers found to have willfully and knowingly discriminated. Under the circumstance of this case, the Court concludes that there is insufficient evidence to support an award of punitive damages of $1,000,000.00— $700,000.00 above the limit that Congress has set in similar cases litigated under Title VII.[8] Therefore, the Court orders the jury's award of punitive damages remitted to $350,000.00, an amount that appropriately sanctions Defendant for its conduct.

### III. CONCLUSION

Defendant's renewed motion for judgment as a matter of law is DENIED. Defendant's motion for a new trial as to liability is DENIED. Defendant's motion for a new trial as to damages is DENIED, subject to Plaintiff's acceptance of the Court's remittitur. The jury's verdict for compensatory damages is REMITTED to $120,308.00, and the jury's verdict for punitive damages is REMITTED to $350,-000.00. Plaintiff shall file a notice of remittitur in accordance with these terms within 30 days of this order, if he accepts the Court's remittitur. If Plaintiff fails to

accept the Court's remittitur within 30 days, a new trial will be ordered limited to the issue of damages.

---

**8.** The Court's reference to § 1981a(3)'s cap should in no way be read as superimposing that cap on § 1981, as a sort of judicial gloss. As noted above, § 1981a(3)'s various caps do not apply to actions brought under § 1981. The Court has merely relied upon the cap as being indicative of Congress's approximation of the appropriate sanction in most employment cases where the employer has been found to have willfully and knowingly discriminated. This type of legislative assessment is entitled to deference in gauging the excessiveness of an award of punitive damages. *See BMW of North America,* 517 U.S. at 583, 116 S.Ct. 1589.