490 So.2d 993 (1986)
Terence B. CRAWFORD, Appellant,
v.
DAVID SHAPIRO & CO., P.A., a/k/a Shapiro Fleischmann & Co., David Shapiro, Paul Fleischmann, Allan Freeman, Philip Goldstein, Appellees.
No. 85-1333.
District Court of Appeal of Florida, Third District.
June 17, 1986.
*994 Gregory B. Hoppenstand, Bay Harbor, for appellant.
Daniel Mones, P.A., and Frank M. Marks, Miami, for appellees.
Before SCHWARTZ, C.J., and BASKIN and JORGENSON, JJ.
JORGENSON, Judge.
Crawford, plaintiff below, appeals from a final judgment entered upon a motion for directed verdict made by David Shapiro & Co., P.A., a/k/a Shapiro Fleischmann & Co., David Shapiro, Paul Fleischmann, Allan Freeman, and Philip Goldstein [collectively Shapiro] after Crawford had rested his case. For the reasons which follow, we affirm in part and reverse in part.
Crawford, a citizen of Britain who presently resides in Dade County, Florida, was a chartered accountant working for a large accounting firm in London. Crawford suffered from a physical ailment and was advised by doctors to move to a warmer climate. Crawford's senior partner arranged for Crawford to meet with Shapiro to discuss the possibility of employment in Miami. As a result of the meetings held between Crawford and Shapiro, Shapiro offered to employ Crawford as an accountant for an annual salary of $27,500 on the conditions that Crawford agree to attend an American university to learn the peculiarities of American accounting and taxation and that Crawford start employment as soon as possible. Crawford agreed to these conditions.
Crawford immediately procured forms from the Miami office of the United States Department of Labor to obtain a work permit and, with Shapiro's help, completed the forms. Crawford then returned to England. Shapiro corresponded with the Department of Labor and kept Crawford abreast of the progress of his application. The Department of Labor approved Crawford's application on March 31, 1982. Thereafter, Shapiro sent Crawford a number of forms to be filed with the United States Department of Justice, Immigration and Naturalization Services [INS] and Shapiro sent the INS certain documents to enable Crawford to obtain the necessary visa and work permit. Shapiro also referred Crawford to an immigration lawyer in Miami and continued to actively pursue the processing of Crawford's application through the INS. In December, 1982, and *995 again in May, 1983, however, Shapiro sent Crawford letters purporting to withdraw the employment offer, although Crawford testified that he did not receive the letters. On October 6, 1983, Crawford phoned Shapiro from England and said he was making his final application for a permanent visa and needed a confirmatory letter of employment. Shapiro phoned back on October 13, 1983, and said he could not send a confirmatory letter because the original job was unavailable but that Crawford would be placed in another job. On October 18, 1983, Crawford was finally approved as a permanent resident alien and his visa was issued. Crawford phoned Shapiro's office and told Shapiro's secretary that he would be arriving in Miami on November 16, 1983. Upon arriving, Crawford talked to Shapiro and arranged to meet with him "to discuss starting the job." Crawford indicated that he would be ready to start in January, 1984. At their meeting on November 22, 1983, Shapiro told Crawford that there was no job available for him.[1]
In February, 1984, Crawford brought suit against Shapiro. Crawford's amended complaint alleges, inter alia, that on March 30, 1981, Shapiro offered (orally and in writing) to employ Crawford as an accountant with an annual salary of $27,500 and that, in reliance upon the offer, Crawford sold his home in England, obtained the necessary visa and work permit to come to Miami, and then came to Miami. Crawford sought both (1) special damages consisting of travel expenses for himself, his wife, and son and moving and storage expenses for household goods, all of which were incurred in relocating to Miami; car rental fees, hotel expenses, and restaurant charges for himself, his wife, and son which were incurred after arrival in Miami; and attorneys' fees for the immigration lawyers; and (2) general damages for loss of salary, past, present, and future.
Although not explicitly stated in his complaint, it is clear that Crawford was proceeding on a breach of contract theory.[2] Crawford's complaint was premised on the original offer made in March, 1981; however, at trial, Crawford took the position that in October, 1983, Shapiro made an oral offer of employment for another job and that he had relied on that offer. With regard to this second job, Crawford testified that no duration, salary, or duties were specified but that he "just assumed it would be the same salary, just slightly different duties."
On appeal, Crawford first argues that sufficient facts were shown by the evidence, when viewed in the light most favorable to him, from which the jury could find that a contract of employment was formed between Crawford and Shapiro. We agree that a jury could reasonably conclude from the evidence presented below that Crawford, by his words and actions, effectively accepted either the original offer or the subsequent offer prior to revocation and, further, that the terms of the first offer were incorporated to a sufficient extent in the second, cf. Rothman v. Gold Master Corp., 287 So.2d 735 (Fla. 3d DCA 1974) (where agreement expires by its terms and parties continue to perform as before implication arises that the parties mutually assented to a new contract containing the same provisions as the old), so that, if the jury finds that Crawford effectively accepted the second offer, the purported agreement[3] entered thereupon does *996 not fail for vagueness or uncertainty in the specifications of the salary, duties, and obligations. See generally 53 Am.Jur.2d Master and Servant §§ 16, 21 (1970).
With respect to damages for loss of salary, however, we must still conclude that the trial court properly directed a verdict for Shapiro. It is well established that, where there is no provision for the duration of employment, the employment contract is terminable at the will of either party, Knudsen v. Green, 116 Fla. 47, 156 So. 240 (1934); Sher v. Shower Door Co. of America, Ltd., 197 So.2d 333 (Fla. 3d DCA 1967); Hope v. National Airlines, Inc., 99 So.2d 244 (Fla. 3d DCA 1957), cert. denied, 102 So.2d 728 (Fla. 1958), and that a party to a terminable-at-will employment contract ordinarily has no cause of action for the other party's decision to terminate the employment relationship.[4]DeMarco v. Publix Super Markets, Inc., 384 So.2d 1253, 1254 (Fla. 1980) (quoting DeMarco v. Publix Super Markets, Inc., 360 So.2d 134, 136 (Fla. 3d DCA 1978), cert. denied, 367 So.2d 1123 (Fla. 1979)); Hartley v. Ocean Reef Club, Inc., 476 So.2d 1327, 1328 (Fla. 3d DCA 1985); Servamerica, Inc. v. Rolfe, 318 So.2d 178 (Fla. 1st DCA 1975). In this case, no duration of employment was specified in either the original or the subsequent offer of employment. The mere fact that the rate of pay was expressed in terms of an annual salary does not mean, as Crawford contends, that the duration of employment is to be construed to be one year. See Russell & Axon v. Handshoe, 176 So.2d 909, 914 (Fla. 1st DCA 1965), cert. denied, 188 So.2d 317 (Fla. 1966); see also Quigley v. Laventhol & Howarth, 382 So.2d 137 (Fla. 1st DCA 1980) (even though offer was made for employment at salary of $17,500 payable biweekly, court held contract was terminable at will on the ground that there was no provision for duration of employment). Crawford introduced no evidence from which to ascertain an intention of the parties that the employment was to be for one year or for any other definite period of time.[5]See Smith v. Smith, 375 So.2d 1138 (Fla. 3d DCA 1979); Sound City, Inc. v. Kessler, 316 So.2d 315 (Fla. 1st DCA 1975). Because any employment agreement formed was terminable at will and because Crawford had yet to perform any duties under the agreement, Crawford was not entitled to any part of the offered salary. See Quigley.
A party to a terminable-at-will employment contract, although unable to recover damages for the other party's decision to terminate, may seek to recover damages caused by the failure of the other party to give reasonable notice of termination. Malver v. Sheffield Industries, Inc., 462 So.2d 567 (Fla. 3d DCA 1985); Perri v. Byrd, 436 So.2d 359 (Fla. 1st DCA 1983). Reasonable notice under the circumstances of this case would have been to inform Crawford within a reasonable time of the decision to terminate the agreement that a position was no longer open.[6],[7] If, in *997 fact, Shapiro knew before Crawford moved to Miami that Crawford would not be employed, Shapiro should have informed Crawford of this fact prior to Crawford's leaving England. The failure to give such notice would cause Shapiro to be liable for those "special" damages being sought by Crawford that would not have been incurred but for the lack of reasonable notice.[8]Malver.
In conclusion, the final judgment is affirmed with respect to the damages for loss of salary and reversed with respect to the "special" damages. Upon remand, if Crawford establishes the existence of a legally operative agreement[9] (i.e., that he effectively accepted an offer of employment and that the resulting agreement was sufficiently definite and certain in its terms), he will be entitled to recover those expenses which he proves would not have been incurred but for the lack of reasonable notice. Crawford's second point on appeal is without merit.
Affirmed in part, reversed in part, and remanded for further proceedings.
NOTES
[1] Crawford testified that Shapiro told him "they hadn't realized until September of 1983 that their firm had a recession and no longer had the same amount of business that they originally had." Though not an issue here, we note that this reason for termination possibly constitutes "just cause." See Telesphere Int'l, Inc. v. Scollin, 489 So.2d 1152 (Fla. 3d DCA 1986), and cases cited in part I of the opinion.
[2] Crawford did not allege in his complaint that he relied on a promise by Shapiro to employ him, nor does he contend in his brief on appeal that the evidence supported an action on a promissory estoppel theory.
[3] See 1 A. Corbin, Corbin on Contracts § 96 (1963) [hereinafter Corbin] (where there is no executed consideration, terminable-at-will employment "agreement" not a "contract"); Annot., 60 A.L.R.3d 226, 232 (1974) (distinguishing between terminable-at-will "agreements" and definite-term "contracts").
[4] A cause of action for wrongful discharge may be maintained where the ground for discharge has been condemned by the legislature. See Smith v. Piezo Technology & Professional Admin., 427 So.2d 182 (Fla. 1983) (recognizing statutory action under section 440.205, Florida Statutes (1979), for wrongful discharge where discharge is in retaliation for employee's pursuing workers' compensation claim).
[5] Crawford's own testimony indicated that the duration of employment was to be longer than one year. He testified that, during his first year, he was to attend school at night and, during the day, assist with auditing and general accounting and that, "ultimately," he was to serve as a taxation manager under Shapiro. (Shapiro did not raise the statute of frauds.)
[6] In this case, where employment has not begun, the requirement of reasonable notice is not the same as a requirement that the contract be terminable within a reasonable time. But cf. Sound City, Inc. (in commercial contract context, court reasoned: "Stating that a contract without a durational provision `will be terminable within a reasonable time' or that it `may be terminated at will on giving reasonable notice' are but two ways of saying the same thing." 316 So.2d at 318 (footnotes omitted)).
[7] Traditionally, under the terminable-at-will doctrine, employers had absolute freedom to discharge employees without notice and without cause. Note, Protecting at Will Employees Against Wrongful Discharge: The Duty to Terminate Only in Good Faith, 93 Harv.L.Rev. 1816, 1816 (1980) [hereinafter Note]. The right to reasonable notice which is implied in terminable-at-will agreements arises out of the concern that the terminable-at-will doctrine is too harsh. Cf. Note at 1816-17 (courts have responded to criticism of the terminable-at-will rule by implying a contractual right to termination only in good faith or by circumventing rule by finding implied-in-fact job duration terms or imposing tort obligations to protect employees against abusive or retaliatory discharge). Though providing a party to a terminable-at-will agreement with some protection, we do not think that the existence of this right makes binding the executory promises (i.e., the promise to employ and the promise to work) which make up such an agreement. But cf. Wright & Seaton, Inc. v. Prescott, 420 So.2d 623 (Fla. 4th DCA 1982) (under employment agreement in which employer reserved right to terminate employment at any time, with or without cause, upon written notice, employer's obligation to give written notice can be held to be consideration eliminating need for mutual obligation); 1A Corbin § 163. These promises remain entirely illusory until performance commences. See 1 Corbin § 96.
[8] Crawford is entitled to recover only those transportation costs, moving expenses, and immigration attorneys' fees which (1) were in the reasonable contemplation of the parties, see generally 17 Fla.Jur.2d Damages §§ 32, 33 (1980), (2) could have been avoided by reasonable notice, Malver, and (3) are over and above what is shown Crawford would have incurred in immigrating to a warmer climate in the absence of an agreement with Shapiro. (Crawford testified that he had decided to move to a warmer climate before he met with Shapiro and was going to pay the costs of transportation to wherever he was going to go, whether it was the United States, Australia, or someplace else.) Any expenditures incurred prior to the time reasonable notice should have been given are not recoverable even if within the reasonable contemplation of the parties. "Logic dictates that the measure of damages cannot be any greater than that which would follow from a termination of the contract at the earliest possible time after the commencement of performance." Milligan v. Union Corp., 87 Mich. App. 179, 274 N.W.2d 10, 12 (1978). See Songer v. Mack Trucks, Inc., 23 A.D.2d 544, 256 N.Y.S.2d 313 (1965); see also Knudsen, 116 Fla. at 52-53, 156 So. at 243. Crawford could not have recovered  at least not under a breach of contract theory, see supra note 2  his relocation expenses if he had begun to work for Shapiro before Shapiro decided to terminate him (even if Shapiro had decided to terminate Crawford the moment after he stepped in the office doorway).
[9] See 1 Corbin § 96 (terminable-at-will employment agreement, although not a contract, is not totally inoperative; such an agreement is an operative offer that can be accepted by rendering all or a portion of the service or performance agreed upon).