Dewitt **KNIGHT**, Plaintiff,

v.

**PALM CITY MILLWORK AND SUPPLY COMPANY,**
Defendant.

No. 99–14194–CIV.

United States District Court,
S.D. Florida,
Fort Pierce Division.

Nov. 18, 1999.

Christopher J. Rush, Rush & Manoogian, P.A., Boynton Beach, FL, for Plaintiff.

Kenneth L. Minerley, Bloch & Minerley, P.L., Boca Raton, FL, for Defendant.

## ORDER

EDWARD B. DAVIS, Chief Judge.

THIS MATTER is before the Court on Defendant Palm City Millwork And Supply Co.'s ("Palm City Millwork's") Motion To Dismiss [D.E. # 5]. The sole issue in this 12(b)(6) Motion is whether a Florida employment-at-will relationship is a "contract" which may form the basis for a 42 U.S.C. § 1981 race discrimination action arising out of failure to promote and hostile environment harassment. Satisfied that in Florida an at-will employment relationship is a contract which may form the basis of a § 1981 claim, the Court will DENY Defendant's Motion.

## FACTUAL BACKGROUND

Knight is a black male, employed by Defendant Palm City Millwork since 1996. The parties agree that Knight has no written employment contract and is an at-will employee under Florida law.[1] Knight, who is a truck driver and performs loading duties for Defendant, alleges that Palm City Millwork, through its employees, engaged in various acts of racial discrimination against Knight from October 1996 to

---

1. While this fact creates the sole issue in this Motion to Dismiss, it does not appear in Plaintiff's Complaint. However, because the parties do not dispute it, and in the interests of judicial efficiency, the Court will treat it as though alleged in the Complaint.

April 1999. The alleged incidents range from discriminatory job assignments and racial remarks, to failure to promote on the ground that the new department was "not ready for color." Plaintiff's Complaint includes four counts: Counts I through III charge failure to promote in violation of 42 U.S.C. § 1981, arising out of three unsuccessful attempts to secure a promotion; Count IV charges hostile work environment, also in violation of § 1981.

## DISCUSSION

■ Section 1981 guarantees that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens...." 42 U.S.C. § 1981(a). In 1989, the Supreme Court held that § 1981 did not protect employees from racial discrimination by an employer after commencement of the employment relationship, but "only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process." *Patterson v. McLean Credit Union*, 491 U.S. 164, 179, 109 S.Ct. 2363, 2374, 105 L.Ed.2d 132 (1989). Congress responded to the Court's decision by amending § 1981 to broaden the definition of the phrase "make and enforce contracts." Congress added subsection (b) to § 1981, which states that "make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Congress' action makes clear that post-formation discrimi-

nation in employment contracts is prohibited by § 1981. *See also Perry v. Woodward*, 188 F.3d 1220, 1226 (10th Cir.1999) ("Section 1981 now clearly prohibits discriminatory conduct that occurs both before and after the establishment of the contractual relationship.").

Since Congress broadened the reach of § 1981, the federal courts have grappled with the question whether an at-will employment relationship is a "contract" within the purview of the statute. The parties correctly note that there is no decision from either the Supreme Court or the Eleventh Circuit directly answering the question. However, the three circuit courts of appeal squarely facing the issue have held that an at-will employment agreement is a "contract" for § 1981 purposes. *See Fadeyi v. Planned Parenthood*, 160 F.3d 1048, 1050 (5th Cir.1998); *Perry v. Woodward*, 188 F.3d 1220 (10th Cir.1999); *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015 (4th Cir.1999).[2] The overwhelming majority of district courts have reached the same conclusion. *See, e.g., Farrior v. H.J. Russell & Co.*, 45 F.Supp.2d 1358 (N.D.Ga.1999); *Lane v. Ogden Entertainment, Inc.*, 13 F.Supp.2d 1261, 1272 (M.D.Ala.1998); *see also Perry*, 188 F.3d at 1227 (listing cases).

Moreover, while not expressly so holding, the Supreme Court suggested in *Patterson* that an at-will employee may maintain a § 1981 action for employment discrimination:

> In *Patterson*, the United States Supreme Court implicitly conceded that an at-will employee may maintain a cause

2. We note that the Second Circuit has confronted the question, and affirmed a district court ruling that, under New York law, an at-will employment agreement cannot form the basis of a § 1981 claim. However, the Second Circuit affirmed in an unpublished opinion, and the district court decision upon which it passed was based upon *Patterson* and its progeny, cases antedating Congress' 1991 amendment to § 1981. *See Moorer v. Grumman Aerospace Corp.*, 964 F.Supp. 665 (E.D.N.Y.1997), *aff'd*, 162 F.3d 1148 (2nd Cir. 1998) (unpublished opinion).

The Seventh Circuit Court of Appeals indicated in dicta that "arguably," an at-will employee under Illinois law has no contractual predicate to sustain a § 1981 claim for discriminatory layoff or termination. The court was more confident, however, that a § 1981 action founded on an at-will relationship would lie for racial discrimination in terms and conditions of employment unrelated to duration. We need not reach the termination question because Knight's § 1981 claims allege hostile environment and failure to promote, not discriminatory discharge.

of action under § 1981. Although ... the *Patterson* Court declined to recognize work place racial harassment as actionable under § 1981, it acknowledged that Patterson, an at-will employee, might have a cause of action based on the claims that her employer failed to promote her based on her race. The Court stated that "the question whether a promotion claim is actionable under § 1981 depends upon whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer. If so, then the employer's refusal to enter the new contract is actionable under § 1981." This language leaves no doubt that the Court considered the employee's relationship with her employer to be a contractual one: Obviously, there can be no "new contract" unless there is first an old contract.

*Fadeyi v. Planned Parenthood,* 160 F.3d 1048, 1050 (5th Cir.1998) (quoting *Patterson v. McLean Credit Union,* 491 U.S. 164, 185, 109 S.Ct. 2363, 2377, 105 L.Ed.2d 132 (1989)). The Eleventh Circuit has also noted in dicta that *Patterson* "is arguably on point" regarding whether an at-will employee can sustain a § 1981 claim. *See Bishop v. Avera,* 177 F.3d 1233, 1235 & n. 6 (11th Cir.1999).[3]

A survey of the cases demonstrates that the dispositive question is whether the state law controlling the employment relationship recognizes at-will contracts as "a species of contract." *See, e.g., Sheppard v. Dickstein, Shapiro, Morin & Oshinsky,* 59 F.Supp.2d 27, 32 (D.D.C.1999) ("Whether specific state law treats at-will agreements as contracts seems to be a controlling factor in deciding whether these agreements are covered under § 1981.").

■ An analysis of Florida cases satisfies the Court that terminable-at-will employment agreements possess the essential attributes of contracts. In Florida, the essential elements of a contract are offer, acceptance, and consideration. *See Donahue v. Davis,* 68 So.2d 163 (Fla.1953). Thus, where a plaintiff is offered employment, accepts that offer, and gives adequate consideration in the form of his labor, an enforceable contract is formed:

> Although an agreement is not a contract, it is not totally inoperative. In many cases, such an agreement is an operative offer that can be accepted by rendering all, or some indicated portion, of the service or other performance agreed upon. Such a rendition of performance, before any notice of revocation, binds the other party to pay the specified compensation. If the party rendering performance has made no promise of any other performances, either expressly or tacitly, *the contract now created* is a unilateral contract.

J.M. Perillo, 1 Corbin on Contracts § 4.2, p. 566 (1993) (footnotes omitted) (emphasis added) (cited in *Crawford v. David Shapiro & Co., P.A.,* 490 So.2d 993, 996–97 & n. 9 (Fla.Dist.Ct.App.1986)).

Florida courts have recognized at-will agreements as contracts in several contexts. For example, in *Crawford,* 490 So.2d at 997, the court stated: "A party to a terminable-at-will *employment contract,* although unable to recover damages for the other party's decision to terminate, may seek to recover damages caused by the failure of the other party to give reasonable notice of termination." (emphasis added). *See also Malver v. Sheffield Indus., Inc.,* 462 So.2d 567 (Fla.Dist.Ct.App. 1985) (same). Florida courts have held that the mere fact that a contract is terminable at will is not a defense to an action for tortious interference, *see Ahern v. Boeing Co.,* 701 F.2d 142, 145 (11th Cir.1983); and have stated that, while "a party to a

---

**3.** The court stated that the *Patterson* Court "found that Patterson, who appears to be an at-will employee, fell within § 1981's protection." *Id.* (citing *Patterson,* 491 U.S. at 185, 109 S.Ct. 2363, 105 L.Ed.2d 132). The Eleventh Circuit declined to address the question squarely, finding it sufficient to decide the qualified immunity issue in *Bishop* on the ground that, at the relevant period, the law on § 1981 and at-will arrangements was in some confusion.

terminable-at-will contract ordinarily has no cause of action for the other party's decision to terminate the employment relationship[, ... a] cause of action for wrongful discharge may be maintained where the ground for the discharge has been condemned by the legislature." *Crawford,* 490 So.2d at 996 & n. 4. *See also Cabanas v. Womack & Bass, P.A.,* 706 So.2d 68 (Fla.Dist.Ct.App.1998) (referring to at-will employment relationship as "contract for employment"); *Recio v. Kent Security Servs., Inc.,* 727 So.2d 320 (Fla.Dist.Ct. App.1999) ("Basic contract principles govern modifications to employment-at-will contracts.") (quoting *Martin v. Golden Corral Corp.,* 601 So.2d 1316 (Fla.Dist.Ct. App.1992)).[4]

Equally important to this Court's decision is effectuating the remedial purposes behind § 1981, which would be frustrated by a conclusion contrary to the one we reach today. As the Fifth Circuit stated:

> To hold that at-will employees have no right of action under § 1981 would effectively eviscerate the very protection that Congress expressly intended to install for minority employees, especially those who, by virtue of working for small businesses, are not protected by Title VII.
>
> .    .    .    .    .
>
> None can contest that discriminating against an employee on the basis of race is illegal and against public policy. In amending § 1981, Congress was advancing such public policy concerns by providing a vehicle for every employee to remedy racial discrimination in the workplace. Congress could not have meant to exclude at-will workers from the reach of § 1981, as to do so would be

to allow use of the ubiquitous at-will doctrine "as leverage to incite violations of our state and federal laws."

*Fadeyi,* 160 F.3d at 1050 (quoting *Sabine Pilot Serv., Inc. v. Hauck,* 687 S.W.2d 733, 735 (Tex.1985) (Kilgarlin, J., concurring)).

Because the Court finds that Florida law recognizes at-will employment agreements as contracts in the broad legal sense of that term, and because a contrary ruling would frustrate the broad remedial reach Congress intended when it amended § 1981, we hold that an at-will employee under Florida law may maintain a § 1981 cause of action for employment discrimination based on race. Accordingly, Plaintiff Knight in the case at bar may proceed with his failure to hire and hostile environment claims under 42 U.S.C. § 1981, predicated upon his at-will employment contract with Defendant Palm City Millwork. It is, therefore,

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss [D.E. # 5] is **DENIED.**

---

4. In sum, we agree with Chief Judge Albritton of our sister court in the Middle District of Alabama, who explained:

> The court believes that Defendant has confused the issue of whether the employee has a "contract" in the sense used in labor law—i.e., employment for an agreed duration, with certain benefits and protections—with the issue of whether there is a contract between an employer and an employee at all. Even at-will employees have some sort of contract, in the broader legal sense of that term, with their employer. Even though the at-will employee could not file a breach of contract claim for being fired (since he has no protections), the at-will employee would be able to file a breach of contract claim if, for example, he was not paid the correct amount. "Contract" is used in § 1981 in its basic legal meaning, not a specialized labor law meaning.

*Lane v. Ogden Entertainment, Inc.,* 13 F.Supp.2d 1261, 1272 (M.D.Ala.1998).