**Lester J. COPLEY, Jr., Plaintiff,**

v.

**BAX GLOBAL, INC., Defendant.**

**No. 98–3048–CIV.**

United States District Court,
S.D. Florida.

Jan. 26, 2000.

Neil H. Chonin, Chonin, Sher, & Navarrete, Coral Gables, Fl, for plaintiff.

Carmen Sirkin Johnson, James Scott Bramnick and Kelly N. Charles, Muller, Mintz, et al., Miami, Fl, for defendant.

## ORDER AND MEMORANDUM OPINION DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HIGHSMITH, District Judge.

In this employment discrimination case, the Court has for consideration Defendant's motion for summary judgment. For the reasons that follow, Defendant's motion is denied.

### I. SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to assess the evidence to determine whether there is an actual need for a trial. *Mulhall v. Advance Security, Inc.*, 19 F.3d 586, 590 (11th Cir.1994); *see also* Fed.R.Civ.P. 56(e) advisory committee's notes (stating that "[t]he very mission of the summary judgment procedure is to pierce the pleadings and assess the proof in order to see whether there is a genuine need for a trial"). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact." Fed.R.Civ.P. 56(c). If no material issue of fact exists, summary judgment avoids the needless delay and expense of a trial. *See* 6 James Wm. Moore et al., Moore's Federal Practice § 56.04(1) (2d ed.1996).

What the material facts are in a particular case is determined by the substantive

law to be applied in the case. *Mulhall,* 19 F.3d at 590. "Material facts are those that might affect the outcome of the suit under the governing law." *Id.* Thus, the mere existence of a factual dispute will not preclude summary judgment. To avoid summary judgment, the factual question must be one that could determine the case.

The party moving for summary judgment is charged with the initial burden of demonstrating the absence of any question of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has made such a showing, the party opposing summary judgment is afforded an opportunity to refute that showing. *Id.* at 324, 106 S.Ct. 2548. Rule 56 states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed.R.Civ.P. 56(e). Thus, the party opposing summary judgment cannot create a question of fact by simply denying the sworn evidence supporting the moving party's motion.

## II. BACKGROUND

On November 20, 1998, Plaintiff initiated this action by filing a one count complaint in the Circuit Court of the Eleventh Judicial Circuit, in and for Miami–Dade County, Florida. Plaintiff's complaint alleges that his employment with Defendant was terminated because of his race, "Anglo," in violation of 42 U.S.C. § 1981. Specifically, Plaintiff alleges that he was terminated from his position as manager of Defendant's ocean services division for Florida and Latin America because he is not His-

panic. *See* Compl. at ¶ 13. Defendant removed the case to this Court on December 14, 1998. Defendant has now moved for summary judgment, arguing that (1) Plaintiff may not bring an action under § 1981 because he was employed on an at-will basis and (2) assuming that Plaintiff may bring an action under § 1981, Defendant had a legitimate, nondiscriminatory reason for terminating him. Defendant has also moved for summary judgment with regard to the availability of punitive damages in this action.

## III. UNDISPUTED MATERIAL FACTS[1]

Defendant is an international shipping company. In 1994, Defendant hired Plaintiff as its "ocean manager" for the region of Florida and Latin America. As ocean manager, Plaintiff was responsible for the movement and handling of freight through Defendant's Miami gateway station. He was also responsible for developing business in his region, which required that he solicit new business personally because he had no sales staff. At all times during his employment with Defendant, Plaintiff was an at-will employee (i.e., he did not have an employment contract).

When Plaintiff was first hired by Defendant, he reported to Keith Histon, Defendant's then international vice president. Subsequently, Plaintiff began reporting to W. Barclay Terhune, Defendant's director of ocean services. When Terhune resigned in 1998, Plaintiff reported to Terhune's replacement Fritz Keller. In the spring of 1998, Defendant underwent a corporate reorganization. Under the new corporate hierarchy, the ocean managers, including Plaintiff, reported directly to Defendant's international vice president. Greg Davis assumed that position shortly before Plaintiff was terminated.[2] The international vice president reports directly to Defendant's president, Greg Montgom-

---

1. Unless otherwise indicated, the Court has derived the facts of the case from those portions of Defendant's statement of undisputed material facts to which Plaintiff voiced no objections. *See* Local Rule 7.5 (deeming facts

set forth in the requisite statement of undisputed material facts as admitted unless controverted by the opposing party's statement).

2. Defendant contends that Davis became international vice president one day before

ery. Montgomery was promoted from the position of vice president/managing director of Canada and Latin America to president in August of 1998.[3]

Between 1996 and 1998, Montgomery received complaints from some of Defendant's Latin American agents concerning Plaintiff's job performance.[4] Montgomery communicated these complaints to Defendant's supervisors. Prior to Plaintiff's termination, Davis discussed some of the complaints of the Latin American agents with Plaintiff. Plaintiff was terminated on October 19, 1998. After Plaintiff's termination, Defendant hired Mariano Rabayo, a Canadian citizen who was born in Bogota, Colombia, to replace Plaintiff as its ocean manager for the Miami gateway station.

## IV. DISCUSSION

### A. 42 U.S.C. § 1981's Application to At–Will Employees

■ Plaintiff has brought this employment discrimination action under 42 U.S.C. § 1981. Section 1981 provides, in pertinent part: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as white citizens...." 42 U.S.C. § 1981(a). In 1991, Congress amended § 1981 to overrule the Supreme Court's decision in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), which interpreted § 1981 only to prohibit discriminatory conduct at "the initial formation of [a] contract." *Id.* at 179, 109 S.Ct. 2363. Under the amended

§ 1981, the term "to make and enforce contracts" is given a broad statutory definition. *See* 42 U.S.C. § 1981(b); *see also Fadeyi v. Planned Parenthood Ass'n of Lubbock*, 160 F.3d 1048, 1049 (5th Cir. 1998) (discussing the breadth of the amended § 1981); *Hopkins v. Seagate*, 30 F.3d 104, 105 (10th Cir.1994) (stating that the 1991 amendment "includes termination of contracts in the protections afforded by 42 U.S.C. § 1981, overruling *Patterson* "). As a result of the 1991 amendment, many employment discrimination plaintiffs whose claims may have otherwise been foreclosed under Title VII of the Civil Rights Act of 1964 now have a federal means of redress. *See generally Fadeyi*, 160 F.3d at 1049 ("[b]ecause Title VII applies only to employers with 15 or more employees, § 1981 provides the only refuge under federal law from race-based employment discrimination by those who hire fewer than 15 employees") (footnotes omitted). In this case, the Court is required to pass upon a question that is currently percolating through the federal courts: whether or not an at-will employee may bring a claim under § 1981.

At first blush, it would appear that § 1981 does not cover at-will employees. After all, § 1981 prohibits discrimination in the making and enforcing of contracts, and at-will employees by definition do not have employment contracts. Relying on this reasoning, Defendant asserts that Plaintiff—an at-will employee—cannot, as a matter of law, state a claim under § 1981.

The Eleventh Circuit has yet to address this issue directly.[5] But all of the circuit

---

Plaintiff was terminated on October 19, 1998, *see* Def.'s statement of undisputed material facts at ¶ 24, while Plaintiff contends that Davis assumed the position sometime earlier in October of 1998. *See* Pl.'s statement of material fact as to which it is contended that there exists a genuine issue to be tried at ¶ 18.

**3.** *See* June 29, 1999 Dep. of Greg Montgomery at 5–6.

**4.** The parties differ as to the nature to the complaints of Defendant's Latin American agents. Defendant contends that the com-

plaints focused on delays and other shortcomings at the Miami gateway station. *See* Def.'s statement of undisputed material facts at ¶ 22. Plaintiff, on the other hand, contends that the complaints centered on the facts that Plaintiff was not Hispanic and did not speak Spanish. *See* Pl.'s statement of material facts as to which it is contended that there exists a genuine issue to be tried at ¶¶ 5–9.

**5.** The Eleventh Circuit has noted, without deciding the issue, that the Supreme Court's *Patterson* decision suggests that § 1981 is applicable to at-will employment relationships.

courts that have squarely addressed the issue have determined that an at-will employee may bring a cause of action under § 1981, at least where at-will employment is recognized as a contractual relationship under the law of the state where the employment occurred. *See Perry v. Woodward,* 199 F.3d 1126, 1132–33 (10th Cir. 1999) (finding that New Mexico law considers at-will employment to be a contractual relationship); *Spriggs v. Diamond Auto Glass,* 165 F.3d 1015, 1018 (4th Cir.1999) (finding that Maryland law considers at-will employment to be a contractual relationship); *Fadeyi,* 160 F.3d at 1050 (finding that Texas law considers at-will employment to be a contractual relationship); *but see Gonzalez v. Ingersoll Milling Mach. Co.,* 133 F.3d 1025, 1034 (7th Cir. 1998) (noting in dicta that the lack of a contract may be fatal to an employment action under § 1981).

The rationale behind the decisions allowing at-will employees to proceed under § 1981 is two-fold. First, courts have recognized that the absence of a formal employment contract does not preclude at-will employees from bringing other types of pseudo-contract actions against their employers. *See Spriggs v. Diamond Auto Glass,* 165 F.3d at 1019 ("at-will employees certainly may sue their employers for failure to pay wages or provide agreed upon wages"). Second, courts have come to the practical realization that: "Congress could not have meant to exclude at-will workers from the reach of § 1981. . . ." *Fadeyi,* 160 F.3d at 1052. It has also been observed that allowing at-will employees to bring suit under § 1981 furthers the remedial purpose of the statute. *See id.; Farrior v. H.J. Russell & Co.,* 45 F.Supp.2d 1358, 1365–66 (N.D.Ga.1999).

The Court agrees with the reasoning of the Fourth, Fifth, and Tenth Circuits that the absence of a formal employment contract does not necessarily foreclose an at-will employee from proceeding under § 1981. So long as some type of contrac-

tual or pseudo-contractual relationship exists between the employee and employer, Congress's clear dictate that racially motivated adverse decisions are prohibited must be given effect. As the Tenth Circuit has explained, § 1981 somewhat alters the rules of at-will employment:

> The amendment of section 1981 to include a prohibition against racially discriminatory conduct in the termination of contracts has effectively altered the at-will employment relationship. Although the general rule that an employer can discharge an at-will employee for any reason or no reason is still valid, an employer can no longer terminate an at-will employment relationship for a racially discriminatory reason.

*Perry v. Woodward,* 199 F.3d at 1333; *see also Fadeyi,* 160 F.3d at 1051–52 ("even though an at-will employee can be fired for good cause, bad cause, or no cause at all, he or she cannot be fired for an illicit cause"). Thus, if Florida law recognizes at-will employment as a contractual relationship of some form, Plaintiff may proceed under § 1981.

■ This very issue was recently addressed by Chief Judge Edward B. Davis of this Court. *See Knight v. Palm City Millwork & Supply Co.,* 78 F.Supp.2d 1345 (S.D.Fla.1999). After concluding that whether or not Florida recognized at-will employment as a contractual relationship was determinative of the plaintiff's ability to state a cause of action under § 1981, Judge Davis thoroughly reviewed the relevant Florida case law. That review led Judge Davis to conclude, "terminable at-will employment agreements possess the essential attributes of contracts" under Florida law. *Id.* at 1999 WL 1250887, at *3. Judge Davis relied heavily upon *Crawford v. David Shapiro & Co., P.A.,* 490 So.2d 993 (Fla.App.1986), which recognized that at-will employees may bring a cause of action for wrongful discharge "where the ground for the discharge has been condemned by the legislature." *Id.* at 996

See Bishop v. Avera, *177 F.3d 1233, 1236 n. 6*    *(11th Cir.1999).*

n. 4. The Court finds this authority persuasive. If under Florida law it is recognized that at-will employment is of a contractual nature such that the Florida Legislature may create a cause of action for wrongful termination of an at-will agreement, Congress may certainly abrogate the at-will relationship to prohibit racially motivated adverse employment decisions. Defendant's motion for summary judgment based on Plaintiff's status as an at-will employee is therefore DENIED.

### B. Plaintiff's Prima Facie Case

■ Employment discrimination actions brought under § 1981 borrow the standards employed in Title VII cases. *See Turnes v. AmSouth Bank, NA,* 36 F.3d 1057, 1060 (11th Cir.1994). A prima facie case of disparate treatment may be proved by direct, circumstantial, or statistical evidence. *See Holifield v. Reno,* 115 F.3d 1555, 1561–62 (11th Cir.1997). In the present case, Plaintiff contends that there is both direct and circumstantial evidence supporting his claim that he was terminated because of his race. Because cases involving direct evidence of discrimination utilize a different form of analysis than circumstantial evidence cases, *see Trotter v. Board of Trustees of Univ. of Alabama,* 91 F.3d 1449, 1453 (11th Cir.1996), the Court will address Plaintiff's allegations of direct and circumstantial evidence separately.

### 1. Direct Evidence of Discrimination

■ If a claimant is able to produce direct evidence that the adverse employment action he suffered was prompted by racial animus, "the ultimate issue of discrimination is proved." *Bell v. Birmingham Linen Service,* 715 F.2d 1552, 1556 (11th Cir.1983). Therefore, the familiar framework for establishing a prima facie case based on circumstantial evidence and the alternating burdens of production and proof established by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) do not apply. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). In *Lee v. Russell County Bd. of Educ.,* 684 F.2d 769 (11th Cir.1982), the Eleventh Circuit explained the difference between cases involving direct evidence and cases involving circumstantial evidence:

> The McDonnell Douglas analysis is intended progressively to sharpen inquiry into the elusive factual question of intentional discrimination, where the plaintiff's case is made out with circumstantial evidence supporting the inference of discrimination. Where a case of discrimination is made out by direct evidence, reliance on the four-part test developed for circumstantial evidence is obviously unnecessary.
>
> Moreover, where a case for discrimination is proved by direct evidence it is incorrect to rely on a McDonnell Douglas form of rebuttal. Under the McDonnell Douglas test plaintiff establishes a prima facie case when the trier of fact believes the four circumstances outlined [in McDonnell Douglas] which give rise to an inference of discrimination. Where the evidence for a prima facie case consists ... of direct testimony that defendants acted with a discriminatory motivation, if the trier of fact believes the prima facie evidence the ultimate issue of discrimination is proved; no inference is required. Defendant cannot rebut this type of showing of discrimination simply by articulating or producing evidence of legitimate, nondiscriminatory reasons. Once an unconstitutional motive is proved to have been a significant or substantial factor in an employment decision, defendant can rebut only by proving by a preponderance of the evidence that the same decision would have been reached even absent the presence of that factor.

*Id.* at 773–74 (footnotes, alteration, quotation marks, and citations omitted); *accord Terbovitz v. Fiscal Court of Adair County,* 825 F.2d 111, 115 (6th Cir.1987); *see also Quick v. Tripp, Scott, Conklin & Smith, P.A.,* 43 F.Supp.2d 1357, 1364 (S.D.Fla.

1999). Thus, a finding that direct evidence of discrimination exists is, standing alone, normally sufficient to defeat a motion for summary judgment. *See Jones v. Bessemer Carraway Medical Center*, 151 F.3d 1321, 1323 n. 11 (11th Cir.1998) (per curiam).

■ It is a rare case, however, where there exists actual direct evidence of discrimination. The Eleventh Circuit has defined direct evidence of discrimination in employment cases as "evidence, which if believed, proves the existence of the fact in issue [ (i.e., that the adverse employment action was taken for a discriminatory reason) ] without inference or presumption." *Id.* Not every tasteless or inappropriate comment concerning a claimant's race constitutes direct evidence of discrimination. *See Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir.1989). "Rather, courts have found only the most blatant remarks, whose intent could be nothing other than to discriminate ... to constitute direct evidence of discrimination." *Id.* Additionally, there must be a direct correlation between the discriminatory remarks and the adverse employment action. *See Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641 (11th Cir.1998). This standard has aptly been described as "rigorous." *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1359 (11th Cir.1999).

In arguing that direct evidence of discrimination exists in this case, Plaintiff relies upon Judge Tjoflat's opinion in *Wright v. Southland Corp.*, 187 F.3d 1287 (11th Cir.1999). There, Judge Tjoflat attempted to clarify the method for evaluating direct evidence of discrimination sufficient to state a prima facie case in employment discrimination cases. In doing so, Judge Tjoflat differentiated between what he refers to as the "preponderance definition" of direct evidence and the "dictionary definition" of direct evidence. *See id.* at 1294. Under the preponderance definition, direct evidence is "evidence from which a reasonable factfinder could find, by a preponderance of the evidence, a causal link between an adverse employment action and a protected personal characteristic." *Id.* The dictionary definition is the more traditional definition derived from the law of evidence, i.e., "evidence that, if believed, proves the existence of a fact in issue without inference or presumption." *Id.* Judge Tjoflat concluded that courts should employ his preponderance definition when considering whether or not direct evidence of discrimination exists at the summary judgment stage. *See id.* Plaintiff argues that the evidence he has presented satisfies this definition.

Plaintiff's reliance on Judge Tjoflat's remonstrance concerning the standard to be applied is misplaced. The advisement that the preponderance definition should be applied by courts is mere obiter dictum, as it was not necessary to the resolution of the case, and neither of the other two members of the panel joined that portion of the opinion. *See id.* at 1306 (Cox, J., concurring in result only); *id.* (Hull, J., concurring in result only). In *Damon v. Fleming Supermarkets of Florida*, 196 F.3d 1354 (11th Cir.1999), the Eleventh Circuit's most recent employment discrimination case involving direct evidence of discrimination, it is implicitly recognized that the proclamation concerning the preponderance definition is only dictum. There, the Eleventh Circuit analyzed the question of whether there was direct evidence of discrimination under the traditional concept of direct evidence—the so-called dictionary definition. *See id.* at 1358–59. Employing the traditional definition, the court found that a statement by the plaintiff's supervisor, made shortly after the plaintiff's termination, that " 'what the company needed was aggressive *young* men like [the plaintiff's replacement] to be promoted' " was not direct evidence of discrimination because it required an inference that the supervisor was motivated by his "interest in promoting young men" when he terminated the plaintiff. *See id.* at 1359. Thus, the well established law in this circuit still requires that the Court apply the traditional concept of direct evidence. *See, e.g.,*

*id.; Standard v. A.B.E.L. Services, Inc.,* 161 F.3d 1318, 1330–31 (11th Cir.1998); *Carter v. Three Springs Residential Treatment,* 132 F.3d at 641; *Caban–Wheeler v. Elsea,* 904 F.2d 1549, 1555 (11th Cir.1990).

In the present case, the evidence that Plaintiff has offered as direct evidence of discrimination takes the form of (1) deposition testimony from Plaintiff and two of his former supervisors, Fritz Keller and W. Barclay Terhune, and (2) a series of electronic-mail messages concerning Plaintiff's termination. The electronic-mail messages discuss the logistics of Plaintiff's termination and installing his replacement. Specifically, there are: (1) discussions concerning what should be done with Plaintiff (i.e., whether he should be terminated or transferred); (2) a statement that removing Plaintiff will inspire confidence in the Latin American agents; and (3) questions concerning how it will appear if Mariano Rabayo is named as Plaintiff's replacement one day after Plaintiff is terminated. The electronic-mail messages, however, make no explicit mention of the motivation, illicit or otherwise, for Plaintiff's termination. Thus, it may only be inferred from the electronic-mail messages that Plaintiff's termination was motivated by racial discrimination.[6] Therefore, the electronic-mail messages do not constitute direct evidence of discrimination.

All of the testimony from the three deponents, cited by Plaintiff as direct evidence that his termination was racially motivated, involves Defendant's alleged desire, as expressed through statements of Defendant's management, to have a Hispanic in Plaintiff's position. None of the remarks described by the deponents were made in close proximity to Plaintiff's termination. The most explicit statements concerning Defendant's desire to have a Hispanic in Plaintiff's position were allegedly made by Defendant's current president, Greg Montgomery. Those remarks were recounted by W. Barclay Terhune, Defendant's former director of ocean services, in the following colloquy from his December 16, 1999 deposition:

Question: Okay. Did Mr. Montgomery ever express to you any criticism of [Plaintiff]?

Terhune: Periodically, yes.

Question: What types of criticism did he advise you of?

Terhune: That he didn't think that a blue-eyed blond-haired fellow would ever get along well in Latin America and that we needed a Latin manager of the office to achieve any level of success.

This evidence, as well as the electronic-mail messages, may be highly probative circumstantial evidence of Defendant's motivation for terminating Plaintiff. But it is not direct evidence of Defendant's motivation.

As discussed above, direct evidence of discrimination is only evidence from which no inference need be drawn to conclude that the adverse employment action was taken for a discriminatory reason. By way of example, the Eleventh Circuit has explained that "a management memorandum saying, 'Fire Earley—he is too old'" would constitute direct evidence of age discrimination. *Damon v. Fleming Super-*

---

6. The Court notes that the parties have proceeded under the assumption that this is a case of possible racial discrimination. *See* Compl. at ¶ 12 (stating that Defendant "intentionally discriminated against Plaintiff … due to his race when it terminated him and replaced him with a person of Hispanic origin"). In doing so, the parties have identified Plaintiff's "race" as "Anglo," *see id.* at ¶ 5, and the "race" of his replacement, Mariano Robayo, as "Hispanic." *See id.* at ¶ 11. While the terms Anglo and Hispanic refer to a person's ethnicity or ancestry, they are not races and this is not technically a race discrimination case. *See generally Enriquez v. Honeywell, Inc.,* 431 F.Supp. 901, 904–906 (W.D.Okla.1977) (discussing the line between racial and national origin discrimination). The Supreme Court, however, has interpreted § 1981 to extend its protections not only to claims of racial discrimination but also to claims of discrimination based upon an individual's "ancestry or ethnic characteristics." *St. Francis College v. Al–Khazraji,* 481 U.S. 604, 613, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987).

*markets of Florida, Inc.,* 196 F.3d at 1359 (quoting *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1081–82 (11th Cir.1990)). The statements relied upon by plaintiff to the effect that Defendant's management wanted a Hispanic in his position do not constitute direct evidence of discrimination, because they require the trier of fact to infer that Defendant's management acted on, or were motivated by, their desire to have a Hispanic ocean manager when they terminated Plaintiff. *See Standard v. A.B.E.L. Services, Inc.,* 161 F.3d at 1330–31; *Earley,* 907 F.2d at 1082 (noting that documents offered as direct evidence of discrimination did not constitute direct evidence because they did not "relate to specific actions taken towards [the] plaintiffs"); *Jones v. Winn–Dixie Stores, Inc.,* 75 F.Supp.2d 1357, 1362 (S.D.Fla.1999), *aff'd,* —— F.3d —— (11th Cir. Nov. 24, 1999) (table). This may be a logical inference, but it is an inference nonetheless and thus the evidence is circumstantial. Accordingly, the Court finds Plaintiff has failed to state a prima facie case through the presentation of direct evidence of discrimination

### 2. Circumstantial Evidence of Discrimination

■ Because employers who engage in illicit discrimination rarely leave records of their invidious acts, cases in which discrimination is proved through direct evidence are rare. Therefore, the Supreme Court developed the now familiar *McDonnell Douglas* rubric to facilitate the assessment of circumstantial evidence in employment discrimination cases. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, a plaintiff is charged with the initial burden of establishing a prima facie case, which he may generally meet by demonstrating that: (1) he is a member of a protected class; (2) he was subjected to adverse employment action; (3) he was treated differently than employees who are not members of the protected class; and (4) there is sufficient evidence to suggest a causal connection between the claimant's protected status and his disparate treatment. *See Weaver v. Tech Data Corp.,* 66 F.Supp.2d 1258, 1269 (M.D.Fla.1999); *Lee v. Mobile County Comm'n,* 954 F.Supp. 1540, 1544–45 (S.D.Ala.1995). Only after the claimant has made such an initial showing does the burden shift to the employer to proffer a legitimate, nondiscriminatory reason for the adverse employment action. *See Lee v. Mobile County Comm'n,* 954 F.Supp. at 1545 (citing *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

In the present case, Defendant concedes, for summary judgment purposes, that Plaintiff can establish a prima facie case of racial discrimination through circumstantial evidence. *See* Def.'s Mot. at 7. Defendant, however, maintains that Plaintiff cannot demonstrate that Defendant's proffered legitimate, nondiscriminatory reason for terminating Plaintiff is a mere pretext.

The burden of producing a nondiscriminatory reason to rebut Plaintiff's prima facie case is a light one. *See Standard v. A.B.E.L. Services, Inc.,* 161 F.3d at 1331. Defendant need only offer "evidence that could allow a rational fact finder to conclude" that Defendant's decision to terminate Plaintiff was not made for discriminatory purposes. *Id.* If Defendant satisfies its burden, the inference of discrimination drops from the case. *See McDonnell Douglas Corp. v. Green,* 411 U.S. at 803. Once the inference of discrimination has been eliminated, Plaintiff must demonstrate that there is a factual question concerning whether Defendant's proffered reason is simply a pretext, in order to avoid summary judgment. *See Mulhall,* 19 F.3d at 598 ("plaintiff's burden is simply to raise a genuine factual question as to the existence of pretext"). This is also not a heavy burden, and in some cases a plaintiff will not have to offer anything beyond his prima facie case to establish a factual question as to pretext. *See id.*

Defendant asserts that Plaintiff was terminated for poor job performance. Specifically, Defendant contends that under Plaintiff's supervision Defendant's Miami gateway station failed to grow, increased expenses while sales fell, and continually received complaints concerning the handling of documents, delays in shipping, and customs issues. Defendant further contends that while Plaintiff may have received satisfactory reviews during his tenor as ocean manager, when Greg Montgomery became Defendant's president he concluded that the productivity of the Miami gateway station was unacceptable and decided to terminate Plaintiff. Therefore, Defendant argues that Plaintiff's past positive reviews do not demonstrate that Defendant's assertion of poor job performance is simply a pretext.

Poor job performance is, of course, a legitimate, nondiscriminatory reason for terminating an employee. *See Damon v. Fleming Supermarkets of Florida, Inc.,* 196 F.3d at 1361. The question therefore becomes whether or not Plaintiff has produced sufficient evidence to create a question of fact as to whether or not his allegedly poor job performance is mere a pretext for a discriminatory motive.

"Language not amounting to direct evidence, but showing some racial animus, may be significant evidence of pretext once a plaintiff has set out a prima facie case." *Jones v. Bessemer Carraway Medical Center,* 151 F.3d at 1323 n. 11. Such is the situation in the present case. Although Montgomery's statements to the effect that he did not believe "a blue-eyed blond-haired fellow" could effectively perform Plaintiff's job and that Defendant needed a "Latin" in the position "to achieve any level of success" are not direct evidence of discrimination, they are significant evidence of pretext. When these statements are considered in conjunction with the otherwise benign facts that (1) Plaintiff was terminated soon after Montgomery became president and (2) Plaintiff was immediately replaced with an individual of Hispanic descent, the evidence of pretext is strengthened. Under these circumstances, the Court finds that Plaintiff has produced sufficient evidence to create a question of fact concerning the pretextual nature of Defendant's legitimate, nondiscriminatory reason for terminating Plaintiff.

For the foregoing reasons, Defendant's motion for summary judgment is DENIED.

### C. Punitive Damages

Defendant has also moved for summary judgment on the issue of punitive damages, arguing that because Plaintiff was terminated for a legitimate, nondiscriminatory reason (i.e., his job performance) there can be no question that Defendant did not act with the requisite intent to warrant an award of punitive damages. *See Ferrill v. Parker,* 168 F.3d 468, 476–77 (11th Cir.1999) (discussing standard for awarding punitive damages under § 1981). As the discussion above makes clear, the motivation behind Plaintiff's termination is a matter of factual dispute. Accordingly, Defendant's motion for summary judgment on the issue of punitive damages is DENIED.

## V. CONCLUSION

Plaintiff is not foreclosed from bringing an action under 42 U.S.C. § 1981 by the fact that he was employed by Defendant on an at-will basis. Plaintiff has presented evidence that draws into question Defendant's stated reason for terminating Plaintiff. This evidence is sufficient to create a factual question as to Defendant's proffered legitimate, nondiscriminatory reason for terminating Plaintiff. Accordingly, Defendant's motion for summary as to Plaintiff's claim and as to the availability of punitive damages is DENIED.