SHIVERS, Senior Judge.
Payroll, Inc. (“Payroll”) and Florida Preferred Risk (“Risk”) [1], appeal a workers’ compensation order requiring Florida Preferred Rise, Inc. (the servicing agent for Florida Preferred Risk Self-Insurers Fund) to pay wage loss benefits and provide medical benefits to Charles Elicker, Jr. Because we find that the order under review is supported by competent substantial evidence, we affirm.
On January 8, 1992, Charles Elicker Jr. (“Elicker”) aggravated a preexisting injury to his back while lifting a bed-confined patient to a wheelchair for wheelchair transport.[2] Prior to his accident, Elicker had been working on assignment from Payroll, Inc. (“Payroll”), an employee leasing company, to VIP Wheelchair, Inc. (“VIP”), a client company of Payroll. Elicker filed a workers’ compensation claim against VIP related to his back injury. VIP then filed its own claim for benefits, joining Payroll and Risk (Payroll’s workers’ compensation carrier) as parties to the action.
At issue is whether an employee leasing company which terminates its contractual relationship with a client company is required to give notice to its employees that they are no longer employed by the leasing company. In this ease, it is undisputed that, prior to Elicker’s industrial accident, no one provided Elicker with notice that he had been terminated by Payroll. Based, inter alia, upon Payroll’s failure to notify Elicker that it had terminated his employment, the Judge of Compensation Claims (JCC) made the award.
The record on appeal reflects that VIP and Payroll had entered into a contractual res- *1037 tionship[3] whereby the employees of VIP became the employees of Payroll.[4] When VIP executed its membership application with Payroll, Elicker simultaneously completed a separate Employment Application, Employee’s Withholding Allowance Certificate and Employment Eligibility Verification for employment with Payroll. Through the established employee-leasing relationship, Payroll employees were covered by workers’ compensation insurance provided by Risk.
It was Payroll’s contention that this arrangement constituted an at-will employment relationship, and that, by letter dated January 6, 1992, Payroll terminated the employee-leasing relationship with VIP effective immediately. Payroll maintained that this action effected an immediate termination of Elicker’s employment with Payroll. By letter dated January 9, 1992, Payroll advised VIP that, as of December 31, 1991, Risk was no longer providing workers’ compensation coverage to VIP employees. Payroll sent a copy of this same letter to Florida Preferred Rise, Inc., the servicing agent for Risk, indicating that it was no longer leasing any employees from VIP.
There was thus some question regarding whether effective notice of termination of the contractual relationship was provided to VIP prior to the time that Elicker sustained his on-the-job injuries. There is no dispute, however, that, prior to Elicker’s accident, neither Payroll nor anyone else ever advised Elicker that he was no longer a Payroll employee.
The JCC found that the notices provided by Payroll to Risk were ineffective to terminate Elicker’s employee status with Payroll. She found that, at the time of the compensa-ble accident, Elicker was an employee of Payroll, leased to VIP (which supervised El-icker’s activities). She determined that Rise was responsible for payment of the workers’ compensation benefits awarded to Elicker, “under any view of the contractual relationships among VIP Wheelchair Transport, Payroll, Inc. and Florida Preferred Rise.”
Payroll has argued that the employment contract with Elicker was terminable at will, and without prior notice. Indeed, Elicker has conceded this at-will employment status. However, termination without prior notice does not equate to termination with no notice, which is what the record reflects here. *1038 Even employment contracts which are terminable at will and of no specific duration require some reasonable notice for termination. Perri v. Byrd, 436 So.2d 359 (Fla. 1st DCA 1983). See also Malver v. Sheffield Indus., Inc., 502 So.2d 75 (Fla. 3d DCA 1987); Crawford v. David Shapiro & Co., P.A., 490 So.2d 993 (Fla. 3d DCA 1986).
Because Payroll failed to prove that it had effectively fired Elicker prior to his industrial accident, the JCC properly ruled that Rise was responsible to provide the workers’ compensation benefits to which Elicker was entitled. Accordingly, the order under review is AFFIRMED.
BARFIELD and KAHN, JJ., concur.

. It is unclear whether the Appellant, Risk, is the servicing agent (Rise) or the Fund itself (Risk). While it appears that Rise is really the Appellant (“Payroll, Inc. and their servicing agent, Florida Preferred Risk, Appellants, appeal.... ”), the designation “Risk" has been used both in the style of the case and in Appellant’s brief.

. As one of its defenses, the E/C asserted that lifting patients into wheelchairs was legally-proscribed behavior outside the scope of employ *1037 ment. We find this argument to be without merit.

. To the extent that Appellant has argued that chapter 468 governs the contractual relationship between the parties, its reliance is misplaced. As stated by the Florida Supreme Court in Gordon v. State, 608 So.2d 800, 802 (Fla.1992), cert. denied, 507 U.S. 1005, 113 S.Ct. 1647, 123 L.Ed.2d 268 (Fla.1993), "[v]alid laws in effect at the time a contract is made enter into and become part of the contract as if expressly incorporated into the contract." In this case, however, the mandatory provisions governing employee licensing companies did not become effective until 1 January 1992 — several months after the parties executed the contract in question. Section 468.526(1) provided that existing employee leasing companies could remain in existence without a license until 1 March 1992, a date well after the occurrence of Elicker's accident. There is no record evidence to show that Payroll ever became a licensed employee leasing company during this time.
However, even if Payroll had become a licensed employee leasing company, the governing statute would not have operated to impair the parties' existing contract. Moreover, F.S. sec. 468.525 (1992) (License requirements) provides, in pertinent part, as follows:
Each employee leasing company shall comply with the following requirements:
* ⅜ * * * ⅞:
(4) The employee leasing company's contractual arrangements with its client companies, shall satisfy the following conditions, whereby the leasing company:
(a) Reserves a right of direction and control over leased employees assigned to the client's location.
[[Image here]]
(d) Retains authority to hire, fire, discipline, and reassign the leased employees.
sfc ⅜ ⅜ ⅜ ⅜ ⅜
(f) Has given written notice of the relationship between the employee leasing company and the client company to each leased employee it assigns to perform services at the client’s worksite.
(Emphasis supplied). Thus, even though these statutory provisions governing the contractual relationships of licensed employee leasing companies were, by their effective date alone, inapplicable to the contract involved here, they reflect a legislative intent consistent with the analysis of contract issues contained herein.

. According to Payroll principal Jack Reinemeyer, on the date that VIP executed its membership application with Payroll, Elicker became a Payroll employee.