962 So.2d 945 (2007)
BLUE STONE REAL ESTATE, Appellant,
v.
David WARD, Matrix Employee Leasing, Inc., Employer # 1, First Commercial Claims Services, Carrier # 1, Enterprise HR, Employer # 3, Insurance Companies of Americas, Carrier # 3, and E & L Concrete Plumbing, Employer # 4, Appellees.
Nos. 1D06-5117, 1D06-5282.
District Court of Appeal of Florida, First District.
July 20, 2007.
Rehearing Denied August 28, 2007.
Steven Hovsepian and Katherine Stone, of Barbas, Koenig, Nunez, Sanders & Butler, P.A., Tampa, for Appellant.
David I. Rickey, Orlando, and Bill McCabe, Longwood, for Appellee David Ward; Kristin L. March and Kristin J. Longberry, of Alvarez, Sambol, Winthrop & Madson, P.A., Orlando, for Appellee Matrix Employee Leasing; Gregory D. White, of Hurley, Rogner, Miller, Cox & Waranch, P.A., Winter Park, for Appellee Enterprise HR.
PER CURIAM.
In this workers' compensation appeal, appellant Blue Stone Real Estate and cross-appellant David Ward, the claimant in the proceedings below, appeal a non-final order rendered by the Judge of Compensation Claims (JCC) on September 11, 2006, finding in part that claimant was not an employee of Matrix Employee Leasing at the time of his compensable accident. We find that there is not competent, substantial evidence in the record to support the JCC's conclusion. Therefore, we reverse and remand for further proceedings.

I. Facts
In 2004, Mr. Ward was hired to work for E & L Concrete Pumping, Inc. At the time he was hired, E & L maintained two employees, Steven McMahon, the owner and president, and the claimant, David Ward. Accordingly, E & L negotiated a contract with Matrix, an employee leasing company, wherein Matrix would employ claimant and "lease" him to work for E & L. Pursuant to the contract, Matrix agreed to manage *946 E & L's payroll and provide workers' compensation insurance for its employees leased to E & L. In addition, the contract stated that Matrix would notify each employee of the client company "at the inception and termination of agreement." Claimant filled out and submitted an employment application to Matrix in July 2004, and subsequently became a Matrix employee, leased to E & L.
After several months so employed, claimant testified that, due to an increasing shortage of available construction work in the state, he and Mr. McMahon made plans to spend several months in New York working for Mr. McMahon's brother. Accordingly, Mr. McMahon testified by deposition that in October 2004, he spoke with a Matrix employee about rendering his account "inactive" for those months he would be in New York, and was informed he could simply fax a written request to Matrix so stating. He also testified he was told that he could bring his account back to active status by similarly faxing a written request when he returned to Florida. In contrast, however, Matrix submitted deposition testimony from its payroll manager that Matrix does not continue its contracts with companies operating outside the state of Florida, nor does it continue to provide workers' compensation insurance to such out-of-state companies. Indeed, Matrix maintains that it severed its relationship with E & L in October 2004, when Mr. McMahon and claimant moved their business to New York. Nonetheless, the record indicates, and Matrix concedes, that it did not provide Mr. McMahon or claimant with written notice of termination.
Mr. McMahon and claimant returned to Florida in early December 2004. Upon returning, Mr. McMahon testified that he faxed Matrix a written request that his account be returned to active status. Mr. McMahon and the claimant both testified that they believed at the time that Matrix would continue providing them workers' compensation insurance. However, Mr. McMahon also testified he encountered some problems calling in his payroll information to Matrix after his return. In particular, Mr. McMahon testified that an employee of Matrix informed him that Matrix wanted to "redo" the contract. Nonetheless, Mr. McMahon contends the employee instructed him to go ahead and pay his employees from the company account, and that Matrix would send him a "zeroed out check."
In December 2004, E & L was hired by appellant Blue Stone Real Estate, a general contractor, to work on a construction site in Citrus Hills, Florida. On December 13, 2004, claimant was at work on the Blue Stone site, pouring concrete into a lintel frame, when the wall on which he was standing collapsed beneath him. Claimant fell more than fourteen feet, shattering his right leg. He was taken to Citrus Memorial Hospital, and treated for several compound fractures. In total, claimant underwent four surgeries, as well as a skin graft procedure. He remained in Citrus Memorial for several weeks, and later was transferred to a nursing home. Claimant has not attained maximum medical improvement.
E & L timely notified Matrix of claimant's accident. Matrix initially provided workers' compensation benefits, covering claimant's several surgeries, as well as his stays in the hospital and nursing home. However, Matrix and its insurance carrier, First Commercial Claims Services, later entered a Notice of Denial, denying claimant further treatment or benefits on grounds that claimant's employment with Matrix ended in October 2004, when claimant moved to New York.
Claimant has filed several petitions for benefits, listing the following companies as his employer: (1) Matrix Employee Leasing and its insurance carrier First Commercial *947 Claims Services, (2) Blue Stone Real Estate (which does not independently carry workers' compensation insurance), (3) Enterprise HR and its insurance carrier Insurance Companies of America, and (4) E & L Concrete Pumping. Matrix has also filed several petitions for benefits, seeking reimbursement for benefits already paid on claimant's behalf. On June 9, 2006, the parties agreed to bifurcate the issues presented in the various petitions. Accordingly, on August 24, 2006, the JCC held a hearing to determine whether claimant suffered a compensable accident, and further, which of the companies listed in the petitions for benefits was claimant's employer at the time of the accident.
On September 11, 2006, the JCC entered the instant non-final compensation order. In relevant part, the JCC found Matrix severed its employment relationship with claimant in October 2004, and that claimant had actual notice of his termination. Thus, the JCC found Matrix was not claimant's employer on December 13, 2006, the date of his accident, and had no legal obligation to provide him workers' compensation benefits. Further, the JCC found that claimant was an uninsured subcontractor working for Blue Stone, a general contractor, on the date of his accident. As such, the JCC ruled claimant was an employee of Blue Stone, by operation of section 440.10(1)(b), Florida Statutes (2004), and entitled to look to Blue Stone for workers' compensation benefits. The JCC reserved jurisdiction to determine the amount and nature of benefits owed to claimant.
Blue Stone and claimant presently appeal the JCC's order. We have jurisdiction to review the non-final order pursuant to Florida Rule of Appellate Procedure 9.180(b)(1)(C) (stating in part that the First District Court of Appeal shall review any nonfinal order of a lower tribunal which adjudicates compensability, provided that "the lower tribunal certifies in the order that determination of the exact nature and amount of benefits due to claimant will require substantial expense and time.").

II. Analysis
Blue Stone and the claimant both argue on appeal that there is no competent, substantial evidence to support the JCC's finding that claimant's employment with Matrix was terminated in October 2004, or alternatively, that claimant had notice of his termination. We find that even if Matrix did terminate claimant's employment in October, when claimant left Florida to work in New York, Matrix nonetheless failed to provide claimant sufficient notice of the termination.
Employee leasing companies are required to notify both their clients and employees when they intend to terminate the employment relationship. See § 468.525(4)(f), Fla. Stat. (2004) (providing that an employee leasing company's contracts with its clients must provide for "written notice of the relationship between the employee leasing company and the client company to each leased employee it assigns to perform services at the client's worksite") (emphasis added).
Further, we have held that section 468.525(4)(f) requires an employee leasing company to provide notice of termination to each employee. In Payroll, Inc. v. Elicker, 668 So.2d 1035 (Fla. 1st DCA 1996), this court affirmed on appeal a final compensation order, wherein the JCC ordered Payroll Inc., an employee leasing company, to provide the claimant workers' compensation benefits. Payroll asserted that it sent a letter to its client company several days before the claimant's injury terminating the contract, and thereby terminated claimant's employment. Nonetheless, neither Payroll, nor any other party, advised the claimant that he was no longer a Payroll employee. Id. at 1037. Accordingly, *948 we noted, "[a]t issue is whether an employee leasing company which terminates its contractual relationship with a client company is required to give notice to its employees that they are no longer employed by the leasing company." Id. at 1036. We held that the employee leasing company's letter to its client company, absent evidence of notice to the claimant, was ineffective to terminate the claimant's employment. "Even employment contracts which are terminable at will and of no specific duration require some reasonable notice for termination." Id. at 1038.
In this case, there is no dispute that Matrix failed to provide claimant direct, written notice of his termination in October 2004. However, the JCC distinguished Payroll from the present case, finding that although Matrix did not provide claimant written notice of his termination, claimant nonetheless had actual notice of the fact. The JCC found claimant knew he was no longer a Matrix employee when he and Mr. McMahon went to New York, and that he also knew certain steps had to be taken on their return to renew his employment with Matrix. We find there is not competent, substantial evidence in the record to support this finding. Claimant testified that, while he was aware that Matrix would not continue to provide payroll while he and Mr. McMahon worked in New York, he believed his workers' compensation insurance coverage with Matrix resumed without incident when he returned to Florida in December. He never testified that he knew his workers' compensation coverage terminated when he went to New York, nor did he testify that he knew there were certain steps Mr. McMahon would have to take in order to renew their coverage. His understanding was further supported by the fact that E & L was permitted to pour concrete on at least two job sites after returning to Florida. Indeed, claimant testified that he believed the general contractors at such sites "wouldn't have let us back in there unless they had paperwork saying we were covered."
Matrix asserts that claimant had notice of termination through his direct supervisor, Mr. McMahon. It argues that Mr. McMahon was told, prior to leaving for New York, that his contract with the company would be terminated when he left the state, and that he would have to renegotiate a new contract when he returned. It also contends that Mr. McMahon encountered problems calling in payroll information for the weeks after he returned to Florida, and that such problems should have indicated that he was no longer one of Matrix's active clients. Nonetheless, Mr. McMahon testified that he never informed claimant of the problems he experienced with calling in payroll, and that claimant would have no reason to know. Thus, what Mr. McMahon did know, or should have known, prior to claimant's injury is of little consequence. The law requires that Matrix provide claimant with notice of his termination, which it failed to do.
Therefore, we find there is no competent, substantial evidence in the record which would support the conclusion that claimant was given notice his employment had been terminated. Blue Stone and claimant have raised a number of other issues regarding the JCC's compensation order. However, because we hold that Matrix provided claimant insufficient notice of his termination, the remaining issues on appeal are rendered moot.
REVERSED and REMANDED for further proceedings.
ALLEN, WOLF, and POLSTON, JJ., concur.